PETER COHN et al., Appellants, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILROAD COMPANY, Respondent.

Springfield Court of Appeals, December 5, 1910.

1. **COMMON CARRIERS: Freight Rates: Discrimination: Long and Short Hauls: Competition.** In an action for penalties provided by sections 1133 and 1134, Revised Statutes 1899, plaintiffs complained that defendant had discriminated against them in the matter of freight charges, by hauling from St. Louis to other towns requiring a longer haul and charging a

less rate, than was charged plaintiff for hauling freight to their town. Defendant admitted the difference in the freight rates, but justified on the grounds that it was necessary to make the reduction to the other towns in order to get the business, because of the competition by river, railroad and wagons it had to meet at other towns, and which competition did not exist at plaintiffs' town. *Held*, the defense was well taken and under the evidence was fully sustained.

2. ——: ——: ——: ——: ——. In an action for the penalty under section 1134, Revised Statutes 1899, for discrimination against the plaintiffs in the matter of freight charges, and in favor of shippers at other towns requiring a longer haul, but for which a lower freight charge was made, it was *held* that the words, "under similar circumstances and conditions" contained in section 1134, did not require the carrier in fixing rates to take into consideration only the extra cost and hazard in hauling the freight, but that the question of honest competition caused by influences and conditions against which the carrier could not guard, might be taken into consideration and authorize the carrier to charge more for a shorter than for a longer haul.

3. ——: ——: ——: ——: ——. Under either section 1133 or 1134, honest competition, together with the actual cost of the service, are questions to be considered, and then the final question under section 1133 is, has the carrier given an undue or an unreasonable preference, and under section 1134, has the carrier charged more for the short haul than the longer under similar circumstances and conditions.

4. ——: ——: ——: ——: ——. The Legislature has provided that the carrier cannot charge two shippers from the same point and to the same point different rates; that it cannot charge more per car load for several car loads than can be charged for one car load under similar circumstances and conditions; that it cannot arbitrarily give a rebate to one shipper, nor arbitrarily charge more for hauling goods from one town to another, regardless of the question of the cost of the service; that it cannot arbitrarily charge more for a shorter than a longer haul, nor discriminate as to furnishing cars and facilities to shippers.

5. ——: ——: ——: Statutory Construction. It cannot be said that sections 1133 and 1134, Revised Statutes 1899, cover the same case. The Legislature enacted them both at one time, and it should not be said that the Legislature intended the two sections of the statute should mean one and the same thing.

6. **STATUTORY CONSTRUCTION.** In construing statutes, words and phrases must be taken in their plain, or ordinary and usual sense.

Appeal from Butler Circuit Court.—*Hon. J. C. Sheppard*, Judge.

AFFIRMED.

*E. R. Lentz* for appellant.

(1) If these plaintiffs were compelled to pay a higher rate of compensation for the transportation of their goods from St. Louis, Missouri, to Poplar Bluff, than the defendant at the same time charged for the same service to the more distant points of Dexter and the other points named, they were damaged to the exact extent of such discrimination. They were entitled to at least as good rates as those accorded to the more distant points. R. S. 1899, secs. 1133, 1134; Cohn & Pelz v. Railroad, 181 Mo. 30; Seawell v. Railroad, 119 Mo. 224; Railroad v. Goodrich, 149 U. S. 680. (2) Unjust and unreasonable discrimination is actionable at common law, independently of any statute, as well as by most of the regulatory statutes. 1 Woods on Railways, 641; Railroad v. Closser (Ind.), 9 L. R. A. 754; Cook v. Railroad (Ia.), 9 L. R. A. 964; Fitzgerald v. Railroad (Vt.), 13 L. R. A. 70; Vincent v. Railroad, 49 Ill. 33; Rothchild v. Railroad, 15 Mo. App. 245. (3) It has been decided by a long line of cases, that, the discriminations or preferences between shippers is a lawful one, only, where it is such as the carrier may give because of the difference in costs, expense or the exceptional character of the service. Railroad v. Commonwealth, 43 L. R. A. 541; United States v. Railroad, 40 Fed. Rep. 101; Interstate Com. Com. v. Railroad, 52 Fed. Rep. 189; Railroad v. Fuel, 31 Fed. Rep. 562; Hay v. Railroad, 12 Fed. Rep. 309; Schofield v. Railroad, 43 Ohio St. 571; Sanford v. Railroad, 24 Pa. 378; McDuffie v. Railroad, 52 N. H. 430; Railroad v. People,

12 N. E. 670; Railroad v. People, 67 Ill. 2; Messenger v. Railroad, 36 N. J. L. 407; United States v. Wright, 167 U. S. 512; Nickolson v. Railroad, 5 C. B. (N. S.) 366; Harris v. Railroad, 30 C. B. (N. S.) 693; Evershed v. Railroad, 2 Q. B. Div. 254; 1 Wood on Railways, 643, sec. 198; Interstate Com. Com. v. Railroad, 168 U. S. 166, 42 Law Ed. 423; State v. Railroad, 41 L. R. A. 246. (4) It is the duty of the courts to interpret the laws as they find them, to accord to the words their ordinary meaning and significance and not to search for occult or strained constructions. R. S. 1899, sec. 4160; State ex rel. v. Johnson, 132 Mo. 105; State ex rel. v. County Court, 128 Mo. 427; Warren v. Pav. Co., 115 Mo. 572; State v. Jones, 102 Mo. 305. (5) The United States Supreme Court says, "We hold that competition between carriers subject to the provisions of said act (i. e., the Interstate Com. Act), does not produce such dissimilarity of circumstances and conditions under which the transportation is performed, as will justify the carriers in charging more for the shorter than for the longer haul. Railroad v. Behler, 175 U. S. 660; Railroad v. Commonwealth, 43 L. R. A. 541.

*Martin L. Clardy* and *James F. Green* for respondent.

(1) The findings of fact of the referee, based on substantial evidence, and approved by the trial court, are conclusive on appeal. Young v. Powell, 87 Mo. 128; Vogt v. Butler, 105 Mo. 479; Howard Co. v. Baker, 119 Mo. 397; Bissell v. Ward, 129 Mo. 439; Bader v. Lumber Co., 134 Mo. App. 135. (2) Competition as well as other conditions and circumstances, is properly considered in determining the question whether there is or is not discrimination in rates of shipment. Railroad v. Interstate Com. Com., 168 U. S. 164; Railroad v. Commission, 162 U. S. 197; Railroad v. Behlmer, 175 U. S. 648; Railroad v. Commission, 181 U. S.

1; Railroad v. Eubank, 184 U. S. 27; Interstate Com. Com. v. Railroad, 50 Fed. Rep. 295; Railroad v. Commission, 206 U. S. 457.

GRAY, J.—Appellants instituted this action in the circuit court of Butler county, on the 20th day of March, 1899, to recover the penalties provided by sections 1133 and 1134, Revised Statutes of 1899. A demurrer was filed to the petition, and the same was sustained and the plaintiffs appealed to the Supreme Court and the judgment was reversed and the cause remanded. The opinion on the former appeal will be found in 181 Mo. 30, 79 S. W. 961. A copy of the petition will be found in the opinion of the Supreme Court, and reference is made thereto for its allegations.

When the cause was remanded, an answer was filed, containing first a general denial, and then a special defense, admitting the rates as alleged in plaintiffs' petition were the rates charged, but denying that the circumstances and conditions under which shipments were made to Poplar Bluff were similar to those made to Charleston, Sikeston and the other points named in the plaintiff's petition; that the other towns were located near the Mississippi river, and that defendant, in order to get any business at said points, was compelled to make the rates charged, in order to meet Mississippi river competition and the competition of the St. Louis & Southwestern Railroad Company.

The parties failed to agree upon a referee, and the court appointed Hon. L. R. Thomason to hear and determine all the issues. On the 10th day of February, 1906, the referee filed his report finding the facts as follows:

"That for more than three years prior to March the 20, 1899, Peter Cohn and Sallie Pelz were copartners engaged in the general merchandise business in the city of Poplar Bluff, Butler county, Missouri, under the firm name and style of Cohn & Pelz; and

that Bertha Cohn is the duly appointed executrix of the estate of Peter Cohn, deceased, formerly a member of the said firm of Cohn & Pelz.

"That the defendant, the St. Louis, Iron Mountain & Southern Railway Company, is a corporation, organized under the laws of the State of Missouri, owning and operating a line of railroad from the city of St. Louis, Missouri, to the city of Poplar Bluff, Missouri, and from the city of Poplar Bluff, Missouri to the city of Cairo, in the State of Illinois. That said railroad, running from the city of Poplar Bluff to the city of Cairo, runs or passes through the cities or towns of Dexter, Essex, Grays Ridge, Morehouse, Sikeston and Charleston, Missouri, and that each of said cities ·or towns are stations on defendant's said line of railroad.

"That for more than three years prior to said 20th day of March, 1899, the defendant held itself out as such, and was in fact, a common carrier for the general public of freight and passengers for hire between said points and stations along the line of its said railroad.

"That St. Louis, Missouri, is the northern terminus of the defendant's said line of railroad; that the distance from St. Louis, Missouri, to Poplar Bluff, Missouri, is 166 miles; that the distance from St. Louis, Missouri, to Dexter, Missouri, is 190 miles; that the distance from St. Louis, Missouri, to Essex, Missouri, is 195 miles; that the distance from St. Louis, Missouri, to Grays Ridge, Missouri, is 199 miles; that the distance from St. Louis, Missouri, to Morehouse, Missouri, is 205 miles; that the distance from St. Louis, Missouri, to Sikeston, Missouri, is 211 miles; that the distance from St. Louis, Missouri, to Charleston, Missouri, by way of the Belmont branch of defendant's line of railroad is 178 miles, and by way of Poplar Bluff is 226 miles; that all of said stations are not on a direct line, but all are in the same general direction

from the city of St. Louis, Missouri, as is the city of Poplar Bluff, and a greater distance therefrom.

"I further find that prior to the 20th day of March, 1896, and until long after the 20th day of March 1899, the defendant did publish and promulgate as its tariff rates to be charged, and that defendant did charge, collect and receive for the transportation of the various classes of freight from the city of St. Louis, Missouri, to the city of Poplar Bluff, Missouri, as follows: On first class, the sum of seventy-five cents per hundred pounds; on second class, the sum of fifty-eight cents per hundred pounds; on third class, the sum of fifty cents per hundred pounds; on fourth class, the sum of forty cents per hundred pounds; and that during said time the defendant did publish and promulgate as its tariff rate to be charged, and that defendant did charge, collect and receive, during the same time, for the transportation of the various classes of freight from the city of St. Louis, Missouri, and shipped through Poplar Bluff, Missouri, to the cities or towns of Dexter, Essex, Grays Ridge, Morehouse, Sikeston and Charleston, as follows: On first class, fifty cents per hundred pounds; on second class, thirty-five cents per hundred pounds; on third class, thirty cents per hundred pounds; on fourth class, twenty-five cents per hundred pounds; that the defendant did charge and collect and require the said firm of Cohn & Pelz to pay on the various classes of freights as follows: On first class, twenty-five cents per hundred pounds; on second class, twenty-three cents per hundred pounds; on third class, twenty cents per hundred pounds; on fourth class, fifteen cents per hundred pounds, for the transportation of freight from St. Louis, Missouri, to Poplar Bluff, Missouri, in excess of the amount charged by defendant to other merchants for the transportation of freight from St. Louis, Missouri, to the other points named on defendant's line of railroad.

"I do further find that from March 20, 1896, to March 20, 1899, the firm of Cohn and Pelz shipped from St. Louis, Missouri, to Poplar Bluff, Missouri, over defendant's said line of railroad of the various classes of freight as follows: Of first class, 120,166 pounds, for which they paid to defendant in excess of the rate charged by defendant at the other points named, the sum of $300.28; of second class, 26,309 pounds, for which they paid to defendant, in excess of the rate charged by the defendant at the other points named, the sum of $60.50; of third class, 126,544 pounds, for which they paid to the defendant in excess of the rate charged by defendant at the other points named, the sum of $252.10; of fourth class, 119,150 pounds, for which they paid to defendant, in excess of the rate charged by defendant at the other points named, the sum of $193.72, amounting in the aggregate to the sum of $806.61.

"I do further find that the said firm of Cohn and Pelz shipped from points outside of the State of Missouri to St. Louis, Missouri, thence to Poplar Bluff, over defendant's line as connecting carrier, on contracts of affreightment made outside of the State of Missouri, the various classes of freight as follows: On first class, 3,460 pounds, for which they paid to defendant, in excess of the rate charged by defendant at the other points named, the sum of $86.50; on second class, 227 pounds, for which they paid to defendant, in excess of the rate charged by defendant, at the other points named, the sum of $5.12; on third class, 1204 pounds, for which they paid to defendant, in excess of the rate charged by defendant at the other points named, the sum of $24.08; on fourth class, 1800 pounds, for which they paid to defendant, in excess of the rate charged by defendant at the other points named, the sum of $27.01, amounting in the aggregate to the sum of $142.77.

"I do further find that at the city of Dexter, there is a standard gauge railroad running or passing through said city, known as the St. Louis & Southwestern, or Cotton Belt Railroad; that during all of the time from March 20, 1896, to March 20, 1899, covering the shipments made by plaintiffs as aforesaid, the St. Louis & Southwestern or Cotton Belt Railroad, was engaged in the transportation of like goods from the city of St. Louis, Missouri, to the city of Dexter, and did solicit such business.

"I do further find as to the other points named, viz: Essex, Grays Ridge, Morehouse, Sikeston and Charleston, during the time of the shipments by plaintiffs as aforesaid, no railroads other than that of defendant entered or passed through said cities or towns, nor was any other facilities maintained by any common carrier for the delivery of freight at said points or either of them; for a long time prior to March 20, 1896, similar goods to those shipped by plaintiffs were shipped from the city of St. Louis, by steamboat down the Mississippi river to nearby landings, and then freighted by wagons overland to said points. That for a long time prior to March 20, 1896, a large portion of all freight received at the city of Charleston from St. Louis, Missouri, was shipped by boat on the Mississippi river to Elkins Landing, a point on the Mississippi river about nine miles northeast of Charleston, and from that point hauled to Charleston by wagon; and that a large portion of all freight received at Sikeston from St. Louis, Missouri, was shipped by boat on the Mississippi river to Commerce, Missouri, and from that point hauled by wagon to Sikeston, a distance of about twenty-two miles; that a large portion of all freight received at Morehouse from St. Louis, Missouri, was shipped by boat on the Mississippi river to Commerce, Missouri, thence over a standard-guage railroad (Houck's Mo. & Ark.) to Morley, Missouri, and from that point hauled by wagon to Morehouse,

a distance of twelve miles; and that the cost of transportation by those means was less than the rates charged by defendant prior to the reduction of its tariff rates at those points; that the rates of defendant at those points were reduced by defendant prior to said March 20th, 1896, in order that defendant may obtain a larger volume of said business.

"That for some time after the reduction of its tariff rates by defendant at Morehouse, Sikeston and Charleston, merchants at the towns of Essex and Grays Ridge caused their goods to be shipped through Essex and Grays Ridge to Morehouse, rebilling them back and paying the local rates, at less cost than the rate maintained at Essex and Grays Ridge; to avoid this circuitous routing of goods, defendant reduced its rate at Essex and Grays Ridge to the same rate charged at Morehouse, Sikeston and Charleston.

"I do further find that in addition to the rates as charged by the defendant, at Dexter, Missouri, defendant gave to its patrons a rebate or reduction from said rates, by way of rebate of from four to eight cents per hundred pounds; I do further find that the rates charged at the city of Dexter by the St. Louis and Southwestern Railroad Company was equally as low as that charged by the defendant, and that the said St. Louis and Southwestern Railroad Company also gave to its patrons a rebate, or reduction on its charges by way of rebate of from four to eight cents per hundred pounds, claimed by said company to be for the purpose of equalizing the drayage, by reason of the fact that its depot was more distant from the business portion of the said city than that of defendant."

The referee also filed his conclusions of law based upon the above facts. It will not be necessary to set forth the conclusions of law, in full, but it is sufficient to state that he found the plaintiffs' cause of action was not under section 1133, but under section 1134, and that it was not a violation of section 1134 to charge

more for a short haul than a longer one, if there was an honest competition at the later point which it was necessary for the carrier to meet, in order to secure business at that point.

The report of the referee was approved, after a hearing on exceptions filed thereto, by the appellants, and a judgment was rendered in favor of the defendant, from which the appellants have appealed to this court.

It is admitted by both parties that the referee's findings of fact are supported by a fair preponderance of the evidence. The exceptions of the plaintiffs are to the referee's conclusions of law based upon the facts.

The first count of the petition is based on section 1133, and that section reads: "It shall be unlawful for any such common carrier to make or give any undue or unreasonable preference or advantage to any particular person, company or firm, corporation or locality, in the transportation of goods, wares and merchandise of any character, or to subject any particular person, firm, corporation or locality or any particular description of traffic, to any undue or unreasonable prejudice with respect to such transportation."

As we have stated herein, the referee found that under the evidence, plaintiffs were not entitled to recover under that section, and if they were entitled to recover at all, it was under section 1134, which reads: "It shall be unlawful for any such common carrier to charge or receive any greater compensation in the aggregate for the transportation of like kinds of property under a similar circumstances and conditions, for a shorter than a longer distance over the same line in the same direction."

In addition to the two sections above quoted, section 1129, Revised Statutes 1899, reads: "If any such common carriers shall directly or indirectly, by any special rate, rebate, drawback or other device, charge,

demand, collect or receive from any person or persons, firm or corporation a greater or less compensation for any service rendered in the transportation of any kind of property upon such railroad within this state than it charges, demands, collects or receives from any other person or persons, firm or corporation for doing for him or them a like service in the transportation of a like kind of property under substantially like circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination."

And section 1130 of the Revised Statutes reads: "It shall be unlawful for any such common carrier to charge, collect, demand or receive more for transporting a car of freight than it at the same time charges, collects, demands or receives per car for several cars of a like class of freight over the same railroad, for the same distance, in the same direction, under substantially similar circumstances and conditions."

In addition to the four sections above copied, there is section 1126 of the Revised Statutes, reading as follows: "No railroad corporation organized or doing business in this state, shall directly or indirectly charge or collect, for the transportation of goods, merchandise or property on its said road for any distance, any larger or greater amount, as toll or compensation, than is charged or collected for the transportation of similar quantities of the same class of goods, merchandise or property over a greater distance upon the same road."

The above sections must be read together, and when so read, and considered with reference to the time of their enactment, there is no conflict or inconsistency between them. Section 1126 became the law of this state prior to 1879, while the other sections were enacted in 1887.

In McGrew v. Railroad Co., 177 Mo. 533, 76 S. W. 995, section 1126 was considered and construed to have for its object, "The regulation of freight charges in

any direction, the same or opposite directions on the same road, regardless of other circumstances or conditions, as applied to shipments of the same class of property in similar quantities.'' The Kansas City Court of Appeals, in McGrew v. Railroad, 118 Mo. App. 379, 94 S. W. 719, has given the statute the same construction, and has further held that it is not in conflict with section 1134.

When this case was before the Supreme Court on the former appeal, it was held that the petition stated a cause of action, under either section 1133 or 1134. But the court decided nothing more. The first count in the plaintiffs' petition, charges in the language of the statute, that the defendant had given to merchants in other towns, and to the other towns, an undue and unreasonable preference and advantage over the plaintiffs and other merchants doing business at Poplar Bluff. It was further alleged in the petition that this undue and unreasonable preference was due to the fact that the plaintiffs were in competition with the merchants at the other cities, and on account of the difference in freight rates, many of plaintiffs' customers had transferred a large part of their patronage to merchants doing business at the other named points.

The referee in his conclusions of law, construed section 1133 as follows: ''It was intended to prevent any unlawful discrimination by the common carrier between persons, company or firm, corporations or localities, by means discriminating in furnishing cars, equal facilities for the transportation of traffic, giving the business or traffic of one person, or locality, preference over another, discriminating in the charging of rates between connecting lines and places and was not intended to apply to such acts as were proven to have been committed by defendant in this cause.''

The appellants contend the Supreme Court, by holding that the first count of their petition stated a

cause of action, decided the case on the merits in their favor. Appellants are wrong in this contention. The petition did charge the facts which constituted an undue and unreasonable discrimination, but the referee found there was no evidence upon which to base a finding for the plaintiffs on the first count.

It cannot be said that sections 1133 and 1134 cover the same case. The Legislature enacted them both at one time, and it should not be said that the Legislature intended the two sections of the statute should mean one and the same thing. The plaintiffs in preparing their petition, acted upon this theory. The first count does not stop by simply stating that the rate to Poplar Bluff was greater than the rates charged to the other points, but alleges the facts which made the rate undue and unreasonable.

If we adopt the theory now advanced by plaintiffs as to the construction of the above sections, then this absurd conclusion is reached: The very act of charging and receiving greater compensation for the short haul than for the longer one, constitutes a complete violation of section 1133. While to constitute a violation of section 1134, the greater compensation must be received for the transportation of like property "under similar circumstances and conditions."

We are of the opinion the referee correctly declared the law when he found that the two sections do not cover the same act, and that under the evidence, plaintiffs were not entitled to recover on the first count of their petition.

The legal principles involved in the second count of the petition are determined by the construction of the words, "under similar circumstances and conditions," contained in section 1134. It is the contention of the appellants, in fixing the rates, the carrier may only take into consideration the extra costs and hazards in hauling the freight over one part of its road than over another.

It is the contention of the defendant that the question of honest competition caused by influences the carrier could not guard against, may be taken into consideration in determining the freight rates, and may authorize the carrier to charge more for the shorter haul than the longer one.

The same words appear in sections 1129 and 1130, with the exception that the word "substantially" appears in the two sections before the word, "similar," while in section 1134 the word "substantially" is omitted. We consider the language, however, in the three sections substantially the same.

The Act of 1887 is substantially in the same language of the Federal Act relating to the same subject, and the sections have been construed many times by the Supreme Court of the United States, and the distinction between the different sections pointed out. Section 1129 is in the exact language of one section of the Federal Act, and in United States v. Wight, 167 U. S. 512, the Supreme Court held in construing that section that the phrase "similar circumstances and conditions," refers to matters of carriage, and not competition. That case was a criminal prosecution and the facts were, the carrier had given to one shipper a rate of three and one-half cents per hundred pounds over other shippers in the same town. The defendant undertook to justify by showing that the shipper to whom the preference had been given, had a switch from the line of another carrier to his warehouse and in shipping goods from the initial point over the line of the other carrier, the goods were carried to the warehouse without drayage, and that the carrier had no switch from its line to the warehouse, and in order to compete with the other carrier, it allowed the shipper three and one-half cents per hundred for hauling the goods from the station to the warehouse, and that no other shipper in the town had a switch to his warehouse, and therefore, no rebate was allowed to others. The court held

it was the duty of the carrier to ship the goods of all merchants in the same town, at the same price, and that competition caused by switch connections could not be taken into consideration. The court, however, said it would not pass upon the question as to whether competition could be considered under the fourth section of the Federal Act, which is section 1134, of our act, for the reason that the question was not involved in the case.

It is the further contention of the appellants that the evidence shows that competition at Dexter was with another carrier, which was subject to the provisions of the laws of this state regulating the charges of carriers, and therefore such competition does not produce dissimilarity of circumstances and conditions under which the transportation is performed as will justify the carrier in charging more for the shorter than for the longer haul.

In support of their position, the appellants quote from the decision of the Supreme Court in the case of L. & N. Ry. Co. v. Behlmer, 175 U. S. 660, as follows: "We hold that competition between carriers subject to the provisions of said act does not produce such dissimilarity of circumstances and conditions under which the transportation is performed, as will justify the carriers in charging more for the shorter than for the longer haul."

An examination of the Supreme Court decision will show that the language quoted is not that court's interpretation of the act. The case had been before the Circuit Court of Appeals, and in the opinion in that court, the language quoted was used. The Supreme Court used the quotation only for the purpose of showing what the court of appeals had held, but expressly held that the Circuit Court of Appeals had incorrectly interpreted the statute. And the court further held that competition is a matter to be considered, and under proper circumstances, will justify the carrier in

charging more for the shorter haul than for the longer one.

The appellants rely on the case of Interstate Com. Co. v. Railroad Co., 52   Fed. Rep. 189, but that case was taken to the Supreme Court of the United States, and the judgment relied on by appellants reversed.

Appellants also claim their construction of the statutes has received the approval of the Supreme Court of Indiana in the case of Ill. Cen. R. R. Co. v. The People, 12 N. E. 673. An examination of that case will show that the statute of Indiana is not the same. The Indiana statute expressly provides that competition shall not be considered as an element in determining whether the discrimination is just or unjust.

The appellants have also cited cases from Iowa, Illinois, New Hampshire and New Jersey, and some from the Supreme Court of the United States. But an examination of the cases will show that the statutes now under consideration were not involved. In several of the cases cited, the carrier charged merchants in the same town different rates for the same service. And in one case the carrier justified its act on the ground that the favored merchant "was a handy man to have around."

The case of L. & N. Ry. Co. v. Commonwealth, 43 L. R. A. 545, fully sustains plaintiff's contention. In that case it is expressly held by the Kentucky Court, that the words, "similar circumstances and conditions," are limited to the cost of performing the service, and the question of competition cannot be considered. The decision was by a divided court, two of the judges dissenting.

Our statutes were adopted about six months after Congress had passed the Federal Act, and as above stated, the sections are practically the same.

In Texas & Pac. Ry. Co. v. Interstate Com., 162 U. S. 197, the carrier, on shipments from New Orleans to San Francisco, charged a higher rate on goods

shipped from New York than from Liverpool. Goods shipped from Liverpool were carried to New Orleans by boat and there delivered to the T. & P. Railroad Company to be carried to San Francisco. Goods shipped from New York were also delivered to the carrier at New Orleans, but a higher rate was charged by the carrier from New Orleans to San Francisco for the New York shipments than for the Liverpool shipments. The merchants in New York, affected by the rates, filed charges before the Interstate Commerce Commission, and the rates were declared by that Commission to be unjust, and the carrier was ordered to make the same charge. The carrier claimed that goods from Liverpool to San Francisco could be carried by water route and other railroads, and if it did not make the special rate for such shipments, it would get none of the business. The Supreme Court of the United States overruled the commission and held that the carrier under the circumstances, had the right to discriminate.

In the case of the Alabama Midland R. R. Co. v. The Commission, 168 U. S. 144, the identical statute now under consideration was passed on. The railroad company charged a higher rate for hauling goods to Troy than it did to Montgomery, although Montgomery was the greater distance from the shipping point. The carrier defended on the ground that it had other railroad competition at Montgomery, and that it was compelled to make the lower freight rate to that point or cease to compete for the business. The Supreme Court of the United States held that the carrier was justified in making the rate, and that competition was an important factor to be considered in determining the question whether there was unjust discrimination in rates of shipment.

In the case of L. & N. Ry. Co. v. Behlmer, 175 U. S. 648; Railroad Co. v. Interstate Commerce Com., 181 U. S. 1, and the Ill. Cen. R. R. Co. v. Interstate

Commerce Com., 206 U. S. 457, the Supreme Court held that competition is one of the most obvious and affected circumstances that make the conditions under which a long and a short haul is performed, substantially dissimilar.

In the case of Interstate Com. Co. v. Railroad, 50 Fed. Rep. 295, freight rates to Los Angeles, Cal., were involved, and the complaint was that freight rates from certain eastern points were lower to that city than to another city sixty miles nearer the initial point. The defense of the carrier was that Los Angeles was a point to which there was active competition in certain kinds of freights between several transcontinental railway lines direct or by water, including ocean freight by the way of Aspinwall and the Straights of Magellan. The court held that such facts justified the carrier in charging the higher rate for the shorter haul, and the decision of the lower court was approved by the Supreme Court in the L. & N. Ry. Co. v. Behlmer, 175 U. S. 648, 44 L. Ed. 309.

The statute should have a reasonable construction. It was not enacted to destroy one of the great pursuits of the people. Commerce is and always has been one of the most important factors of civilization. The property of the individuals is carried to market, as a rule, by the common carrier. The common carrier is generally a public service corporation. It is created by the state, enjoys certain special privileges for which it submits to regulations. The purpose of the statute was to secure a "square deal" for all persons or corporations having business with the common carrier. Special rebates and privileges to favored shippers had become an evil that Congress and the state Legislature desired to remedy. The Federal act and the state act were both passed for the purpose of regulating the charges and securing to the shippers equality in charges and service from the carrier. The Legislature did not declare that in no event should the carrier charge more

for the shorter haul than the longer one, but that the carrier should not charge more under similar circumstances and conditions.

In this case, the merchants at Poplar Bluff were in no wise injured by the rates given to the other cities named in the petition. If the facts found by the referee are true, then prior to 1896 the defendant was unable to secure any business at the cities named in the petition, except Poplar Bluff; that at said time freight from St. Louis was carried down the Mississippi river by means of steamboats to nearby landing points, and then hauled by wagon to the cities, and the charges for getting the freight from St. Louis to the cities were much less than the rate charged by the defendant. That situation was not created by the defendant, but under circumstances over which it had no control. If it maintained its rates at said points, it would continue to haul empty cars. The evidence shows the other points were not competitors of Poplar Bluff for business.

It seems to us the construction given to the statute by the Supreme Court of the United States is the proper one, and that the construction of the Kentucky Court of Appeals is erroneous. The Kentucky court admits its construction is contrary to that of the Supreme Court of the United States, but claims it is at liberty to place its own construction upon the state statute, although it be contrary to the law as declared by the highest court in the land. It is true that a state court is authorized to put its own construction upon its statute, and is not bound by the construction thereof by the Federal courts, and while we have the highest regard for the decisions of the Supreme Court of the United States, and recognize the great learning of the members of that court, yet we would not follow its decision as to the proper construction to be placed upon our statute if we believed that court to be wrong. But

we are of the opinion that the construction given to the statute by the United States Court is the proper one, and we are therefore not placed in the embarrassing position of putting our knowledge of the law at a premium over the knowledge of that great legal tribunal.

The Interstate Commerce Commission has recognized that its former construction of sections 1133 and 1134 was unsound, and now considers the question of competition in determining the right of the carrier to charge more for the short haul than the longer one. [L. & N. R. R. Co. v. Behlmer, 175 U. S. 1. c. 670, 44 L. Ed. 1. c. 317.]

In construing statutes "words and phrases must be taken in their plain or ordinary and usual sense." [Section 4160, R. S. 1899.] Neither sections 1133 nor 1134 make it unlawful for the carrier to discriminate under all circumstances. Section 1133 makes it unlawful for the carrier to give "any undue or unreasonable preference or advantage." Therefore, in order to be a violation of that section, the carrier must not only have given preference or advantage, but it must have been an undue and unreasonable preference. Under section 1134 it is unlawful to charge more for the short haul than the longer one only when both are under "similar circumstances and conditions." It therefore becomes a question to be determined by the facts in each individual case, whether the preference was undue and unreasonable if the charge is under section 1133, and whether the haul under section 1134 was under similar circumstances and conditions.

It seems to us that under either section, honest competition is a matter to be taken into consideration. Also the actual cost of the service is a question to be considered. And when these things have been properly considered, the final question under section 1133 is, has the carrier given an undue or an unreasonable preference? And under section 1134, has the carrier

charged more for the short haul than the longer one under similar circumstances and conditions.

The appellants claim the construction placed upon the statutes by the Supreme Court of the United States, and which we have followed herein, renders the statute a nullity. With this contention we do not agree. All the sections of the statute must be read and construed together, and when this is done, it will be ascertained the Legislature has provided that the carrier cannot charge two shippers from the same point and to the same point, different rates; that it cannot charge more per carload for several carloads than can be charged for one carload under similar circumstances and conditions; that it cannot arbitrarily give a rebate to one shipper, that it cannot arbitrarily charge more for hauling goods to one town than another, regardless of the question of the cost of the service; that it cannot charge arbitrarily more for a shorter haul than a longer one; that it cannot discriminate as to furnishing cars and facilities to the shippers. But the Legislature has provided if the cost of the service in carrying freight over one part of the road is greater than over another, that fact may be considered by the carrier in fixing rates between the points. And it is but a fair construction of the statute to say that the Legislature intended that at points where the carrier is required to meet honest competition—not caused by its own act—it has the right to fix its rates to meet such competition, although the effect thereof may cause shippers to pay more for a short haul than is charged for the longer one. In other words, suppose the carrier has a line of road from St. Louis to New Orleans. The road has no competition with Mississippi river transportation between St. Louis and New Orleans, but to the latter place the steamboats are hauling freight from St. Louis for fifty cents a hundred, and under the law, the railroad has the right to charge sixty cents a hundred for freight

to a point one hundred miles north of New Orleans. The river competition is an honest competition over which the railroad has no control. We do not believe the Legislature intended it should be unlawful for the railroad company to meet the competition at New Orleans, unless it gave up its local business and fixed its rates to all intermediate points accordingly.

There is another point the appellants have earnestly urged in their brief. They claim the steamboat carrier could not deliver the freight to the merchants at certain towns named in the petition, but in order to deliver the freight to merchants at such points, wagons were used to haul from the river several miles, that such competition cannot be taken into consideration by the carrier in fixing its rates. And in support of their contention appellants cite L. & N. R. R. Co. v. Behlmer, supra, as follows: ''The competition of one transportation line cannot be said to meet that of another for the carriage of the traffic from any particular locality, unless one line can perform the service if the other does not.'' This language is not the Supreme Court's construction of the statute. It was the language of the Circuit Court of Appeals, copied in the decision of the Supreme Court only for the purpose of showing the construction of the Circuit Court of Appeals, and with which construction the Supreme Court of the United States did not agree in that case.

We do not see why such competition should not be considered. If the steamboat should deliver the freight at a landing for a merchant, whose place of business was one mile from that point, and the merchant could get his freight hauled from that landing to his store so that he could get the goods in his house from the shipping point at a rate of fifty cents a hundred, if some railroad company had a road into the same town, it would have to deliver goods at that town at practically the same price, or carry no freight. How could it be said it would be an undue and unreasonable

preference for the carrier to meet that competition at that point; or if the carrier was charged with violating section 1134, and he should show he had that character of competition, which did not exist at some intermediate point, how could it be held that the freight was carried to the two points under similar circumstances and conditions.

We are of the opinion that all honest and legitimate competition may be considered in determining whether the carrier has been guilty of such unlawful conduct as to be liable for the penalty of three times the amount of damage sustained, together with a reasonable attorneys' fee, as provided by section 1140.

The parties having agreed that the referee fairly and correctly determined the facts, and it appearing therefrom that lower rates for the longer haul than the shorter one were due to the competition at points affected by the longer haul, we are of the opinion that the carrier is not liable for the penalty sued for, and that the referee and the trial court correctly declared the law, and the judgment should be affirmed, and the same is accordingly done. All concur.

## ON MOTION FOR REHEARING.

GRAY, J.—Appellants filed a motion for rehearing in this cause, claiming that the opinion is in conflict with the opinion of the Supreme Court in the case of McGrew v. Mo. Pac. Ry. Co., finally determined November 12, of this year. The motion has been argued orally in this court.

The McGrew case was not cited by counsel in their briefs, or mentioned in the oral argument at the time the case was submitted, and at the time the opinion was prepared in this case, we had no knowledge that the Supreme Court had considered the questions involved in the McGrew case.

This cause has been twice in the Supreme Court

of this state. As stated in our former opinion, the suit was instituted in 1899 to recover the penalties provided by sections 1133 and 1134, Revised Statutes 1899. The circuit court sustained a demurrer to the plaintiffs' petition, and plaintiffs appealed to the Supreme Court and secured a reversal of the judgment. The opinion on that appeal will be found in the 181 Mo., page 30, 79 S. W. 961. When the cause was remanded, the defendant filed its answer and justified its discrimination as therein alleged. The trial resulted in a judgment in favor of the defendant, and plaintiffs again appealed to the Supreme Court, and the opinion on the second appeal will be found in the 131 S. W., page 881.

The only question passed on by the Supreme Court on the second appeal, was the jurisdiction of the Supreme Court to determine the cause. The Supreme Court held that it was without jurisdiction and certified the cause to this court.

Some of the questions in the cause, at the time it was instituted, have been settled by the Supreme Court on the two appeals. The first appeal settled affirmatively, so far as this court is concerned, the sufficiency of the petition. The second appeal determined other questions in the following language: "Looking further into the record, we have been unable to find that any constitutional question was raised in the circuit court and decided adversely to plaintiffs. Indeed, so far as we can gather from the recitals of the record, it was simply a construction of sections 1133, 1134, of the Revised Statutes of 1899, and neither side assailed the constitutionality of either of said sections."

We accepted the statement of the Supreme Court as to the issues involved, and attempted to decide them.

In their motion for rehearing, appellants now claim, even though they have no right to recover under sections 1133 or 1134, yet they have a right to recover under article 12 of our state Constitution. In order

for us to so hold, we must construe said section of our Constitution, and thereby bring into the case a constitutional question that plaintiffs should have presented to the Supreme Court before that court transferred the cause to this court, on the ground that no constitutional question was involved. Whether a constitutional question was in the case, was a matter for the Supreme Court to determine when the cause was in that court. And that court, having determined that no such question was involved it is binding on us in this case.

Accepting the statement of the Supreme Court, that the issues involved in this case are simply a construction of sections 1133 and 1134 of the Revised Statutes of 1899, is there anything in our opinion in this case that is in conflict with the decision of the Supreme Court in the McGrew case?

The McGrew case was a hard one for the Supreme Court to decide. When the cause was in one of the divisions of the court, differences resulted in the filing of two opinions, and the cause was transferred to the Court in Banc. One member of the court having been of counsel in the trial court, only six of the judges sat in the case in Banc, and they divided equally, and thereupon, the Honorable Willard P. Hall was called in as special judge, and wrote the opinion concurred in by three of the regular judges—three dissenting in a separate opinion. The question about which the court differed was whether section 1126, adopted in 1872, was repealed by sections 1133 and 1134, adopted in 1887.

In the McGrew case the plaintiff's cause of action was under section 1126, and it was claimed by the defendant that the section was repealed by sections 1133 and 1134. The court held that section 1126 was not repealed, and that there is no necessary conflict between the sections. In so holding the court said:

"Two laws do not conflict with each other simply because they 'establish the same right or provide redress for the same wrong,' and in such a case, 'the person seeking to enforce the right or avenge the wrong may proceed on the law he chooses.'

"The acts of 1872 and 1887 created two systems for preventing discrimination by railroad companies. The system created by the latter act contains some but not all of the things contained in the system created by the former act. The systems are by no means identical, and they do not conflict with each other.

"What if a violation of the short-haul section of the act of 1887 also violates the act of 1872? The person injured by said violation can proceed under the act of 1872, and the fact that the matter or thing complained of also constitutes a violation of the act of 1887 will not prevent his recovery. Take the case at bar. The allegations in every count of the petition show a violation of the act of 1872 and not of the act of 1887, for the reason that there is, except in one count, no allegation that the longer or shorter hauls were made in the same direction, and in none of the counts is there any allegation that the hauls were under the same or like circumstances or conditions. Proof of said omitted fact would not have defeated plaintiff's recovery. Such proof would have been essential to a recovery under the act of 1887, but such proof would not have prevented a recovery in the case at bar, founded on the act of 1872.

"The fact that the penalties created by the two acts are different is immaterial. In order to enforce the penalties prescribed by the act of 1887 for violating its short-haul section, it is necessary to allege and prove that the shorter and longer hauls were made in the same direction and under similar circumstances and conditions."

Thus it will be seen that the Supreme Court, in the McGrew case, construed sections 1133 and 1134

precisely as we have. In the opinion in this case we hold that there is no conflict between sections 1126 and 1133 and 1134, in the following language: "The above sections must be read together, and when so read, and considered with reference to the time of their enactment, there is no conflict or inconsistency between them." We also held: "Section 1133 makes it unlawful for the carrier to give 'any undue or unreasonable preference or advantage.' Therefore, in order to be a violation of that section the carrier must not only have given a preference or advantage, but it must have been an undue and unreasonable preference. Under section 1134 it is unlawful to charge more for the short haul than the longer one only when both are under 'similar circumstances and conditions.' It therefore becomes a question to be determined by the facts in each individual case whether the preference was undue and unreasonable if the charge is under section 1133, and whether the haul under section 1134 was under similar circumstances and conditions." In so holding, we are in perfect accord with the language of the Supreme Court in the McGrew case, wherein it is said: "In order to enforce the penalties prescribed by the act of 1887 for violating its short-haul section, it is necessary to allege and prove that the shorter and longer hauls were made in the same direction and under similar circumstances and conditions."

After a most careful consideration of appellants' motion for rehearing, and fully realizing the importance of the questions presented, we are firmly of the opinion that the motion for rehearing should be overruled, and the same is accordingly done.