THE STATE, Appellant, v. HARRY WIPKE and RESERVE MUTUAL CASUALTY COMPANY, a Corporation.—133 S. W. (2d) 354.

Court en Banc, November 7, 1939.

*Roy McKittrick,* Attorney General, *J. E. Taylor* and *J. F. Alle-bach,* Assistant Attorneys General, for appellant.

*McCune, Caldwell & Downing, Harding, Murphy & Tucker, Fordyce, White, Mayne, Williams & Hartmann* and *Lord, Bissell & Kadyk* for respondents.

TIPTON, C. J.—This is an action upon a surety bond, wherein respondent Wipke is principal and respondent Reserve Mutual Casualty Company, a corporation, is surety given under the provisions of the Liquor Control Act of Missouri (Laws of Missouri, Extra Session, 1933-34, page 77, and amendments thereto). A judgment of the Circuit Court of St. Louis County was made in favor of respondents and from that judgment appellant has duly appealed to this Court.

The case was tried below on an agreed statement of facts. Wipke, holding only a five per cent liquor license, sold one drink of whiskey to an inspector for the Supervisor of Liquor Control, in violation of the Liquor Control Act. The sole question involved is whether or not the State may recover the full penalty of the bond without proving that it was damaged as a result of the principal's breach of the bond.

The conditions of the bond in question as executed by the respondents to the Supervisor of Liquor Control are as follows:

"Now, Therefore, The Condition of This Obligation is Such, That, if the said Principal does not violate any of the provisions of Committee Substitute for Senate Bills Nos. 6, 21, 22, 23, 24 and 25, passed by the 57th General Assembly in Extra Session, and any acts amendatory thereto, or any rule or regulation of the Supervisor of Liquor Control; and if said Principal shall at all times keep an orderly house and does not sell, give away, or otherwise dispose of, or suffer the same to be done about his premises, any intoxicating

liquor in any quantity to any minor; and if said Principal shall pay all taxes, inspection and license fees provided for by law, together with all fines, penalties and forfeitures which may be adjudged against the Principal under the Liquor Control Act and amendatory acts thereto; and if said Principal shall faithfully perform all duties imposed upon him by law, then this obligation shall be null and void; otherwise to remain in full force and effect; provided, the enumeration of the foregoing specific provisions shall not be considered as limiting or affecting in any way the foregoing general provisions; provided, further, that a breach of any of the conditions of said bond, whether general or special, shall work a forfeiture of said bond.''

There are two sections of the Liquor Control Act which provide for bond to be given by liquor dealers, Section 13-a and Section 19. It is the contention of the appellant that the bond in question is governed by Section 13-a, which is as follows:

''Any person who possesses the qualifications required by this act, and who meets the requirements of and complies with the provisions of this act, and the ordinances, rules and regulations of the incorporated city in which such licensee proposes to operate his business, may apply for and the Supervisor of Liquor Control may issue a license to sell intoxicating liquor, as in this act defined, by the drink at retail for consumption on the premises described in the application. *Provided,* that no license shall be issued for the sale of intoxicating liquor, other than malt liquor containing alcohol not in excess of five (5%) per cent by weight, by the drink at retail for consumption on the premises where sold, in any incorporated city having a population of less than Twenty Thousand (20,000) inhabitants, until the sale of such intoxicating liquor, by the drink at retail for consumption on the premises where sold, shall have been authorized by a vote of the majority of the qualified voters of said city. Such authority to be determined by an election to be held in said cities having a population of less than twenty thousand (20,000) inhabitants, under the provisions and methods set out in this act. The population of said cities to be determined by the last census of the United States completed before the holding of said election. *Provided further,* that for the purpose of this act, the term 'city' shall be construed to mean any municipal corporation having a population of five hundred (500) inhabitants or more. *Provided further,* that no license shall be issued for the sale of intoxicating liquor, other than malt liquor containing alcohol not in excess of five (5%) per cent by weight, by the drink at retail for consumption on the premises where sold, outside the limits of such incorporated cities. In each instance, a bond in the sum of two thousand ($2,000.00) dollars, with sufficient surety, to be approved by the Supervisor of Liquor Control, must be given for the faithful performance of all duties imposed by law upon the licensee, and for the faithful performance of all the

requirements of this act, and any violation of such conditions, duties or requirements shall be a breach of said bond and shall automatically cancel and forfeit the license granted hereunder; *provided,* that no person financially interested in the sale of intoxicating liquor at wholesale shall be accepted as surety on any such bond.''

On the other hand, the respondents contend that Section 13-a and Section 19 both govern in the granting of the license to Wipke, and that it was proper for the bond to contain not only the conditions required by Section 13-a, but also the conditions required by Section 19. The latter section reads:

''Application for license to manufacture or sell intoxicating liquor, under the provisions of this act, shall be made to the Supervisor of Liquor Control. Before any application for license shall be approved the Supervisor of Liquor Control shall require of the applicant a bond, to be given to the state, in the sum of Two Thousand Dollars, with sufficient surety, such bond to be approved by the Supervisor of Liquor Control, conditioned that the person obtaining such license shall keep at all times an orderly house, and that he will not sell, give away or otherwise dispose of, or suffer the same to be done about his premises, any intoxicating liquor in any quantity to any minor, and conditioned that he will not violate any of the provisions of this act and that he will pay all taxes, inspection and license fees provided for herein, together with all fines, penalties and forfeitures which may be adjudged against him under the provisions of this act.''

It is a cardinal rule of construction that every word, clause, sentence and section of an act must be given some meaning unless it is in conflict with the legislative intent. [Holder v. Elms Hotel Co., 338 Mo. 857, 92 S. W. (2d) 620, 104 A. L. R. 339; State ex rel. Kansas City Power & Light Co. v. Smith, 342 Mo. 75, 111 S. W. (2d) 513.] Respondents rely upon this rule and cite cases of State ex rel. Dean v. Daues, 321 Mo. 1126, 14 S. W. (2d) 990; Johnson v. Kruckemeyer, 224 Mo. App. 351, 29 S. W. (2d) 730.

With this rule in mind, we cannot agree with respondents that Section 13-a must be construed with Section 19. To uphold the respondents, we would have to presume that the Legislature did a useless thing in passing the paragraph dealing with the bond required in Section 13-a. The only condition of the bond required by that section is ''the faithful performance of all duties imposed by law upon the licensee, and for the faithful performance of all the requirements of this act,'' while one of the conditions of the bond required in Section 19 is that the licensee ''will not violate any of the provisions of this act.'' In other words, the conditions of the bond, as contended by respondents, could easily have been covered by Section 19, and the requirements set forth in Section 13-a would have been unnecessary. The Legislature enacted both Sections 13-a and 19 in one bill and it should not be said that the Legislature in-

tended that the two sections of the act should mean one and the same thing. [Cohn et al., v. St. Louis, I. M. & S. Railroad Co., 151 Mo. App. 661, 133 S. W. 59.]

By giving effect to every word, clause and sentence in this act which refers to the bond, we come to the conclusion that a license for the sale of liquor by the drink does not come under the provisions of Section 19. There would be no need for a bond that secured the license fee because Section 22 (Laws of Missouri, 1935, page 274) requires that before the license is issued the fee must be paid. Nor could the requirement of this section that the bond be security for taxes stand because Section 30-d (Laws of Missouri, 1937, page 534) requires that any persons holding a retail liquor license must purchase liquor from a duly licensed wholesale liquor dealer who must pay the tax under the provisions of Section 21-a-1 (Laws of Missouri, 1937, page 531). We do not agree with the respondent that the clause, ''that the person obtaining such license shall keep at all times an orderly house,'' could apply solely to a dealer who sells by the drink. Section 22 (Laws of Missouri, 1935, page 274) authorizes a merchant who has at least $1000 in stock of merchandise, exclusive of liquor, to sell at retail liquor in the original package, and he too must keep an orderly house at all times. However, we conclude that the Legislature presumed that if a person went into a place of business where liquor was sold by the drink that he would not ·be shocked to find persons who were under the influence of intoxicating liquor, but if he went into a drug store or a grocery store he would certainly not expect to find such conditions existent. ██ ''The question of the control and regulation of the liquor traffic is one that calls for and has received the careful consideration of the Legislature. Arguments as to the wisdom of the measures adopted address themselves to the lawmaking body, not to the courts.'' [State v. Kennedy, 343 Mo. 786, 123 S. W. (2d) 118, l. c. 122.] Nor are we impressed with the argument of respondents that the clause, ''and that he will not sell, give away or otherwise dispose of, or suffer the same to be done about his premises, any intoxicating liquor in any quantity to any minor,'' applies only to a liquor dealer who sells by the drink. We think it could apply equally to a dealer who sells in the original package, or even to a wholesaler or manufacturer. We also think that the clause that he will pay ''all fines, penalties and forfeitures'' could apply to wholesaler, wholesaler's agent, manufacturer and original package dealer as well as a dealer who sells by the drink.

██ We have come to the conclusion that the provisions in Section 13-a apply only to a dealer who sells by the drink, and that Section 19 applies to the manufacturer, the wholesaler, the wholesaler's agent, and the person who sells only in the original package.

Respondents in their brief say, ''It is a well-settled rule, as pointed out under point IV of appellant's brief, that where a bond is given in pursuance of a statute, courts will, in enforcing the bond, read into

it the terms of the statute which have been omitted, and will likewise read out of it terms included in it that are not authorized by the statute." This is undoubtedly a correct statement of the law. [See 11 C. J. S. 420; Woods v. State ex rel. Rainey, 10 Mo. 698; Rubelman Hardware Co. v. Greve, 18 Mo. App. 6.]

Having already reached the conclusion that the bond in question is governed solely by the provisions of Section 13-a, we must read out of the bond all conditions which do not comply with that section, which section provides "for the faithful performance of all duties imposed by law upon the licensee, and for the faithful performance of all the requirements of this act." Therefore, the only condition in a bond under this section would be for faithful observance of the law and nothing more.

The question which then arises is: Where the condition of such bond is breached, is it incumbent upon the State to prove actual damage, or is the State entitled to recover the full amount of the bond merely by showing a breach thereof? Stated otherwise, is the bond an indemnity bond or a forfeiture bond?

In 11 Corpus Juris Secundum, page 510, we find:

"Where a statute requires the execution of a bond to the state, or to the United States, for a fixed penalty, conditioned for a compliance with the laws in the respects named therein, the penalty named in the bond is the measure of damages for its breach, or rather is a punishment inflicted by the sovereign for the violation of a pledge to observe its law, unless the statute under which the bond is given or .the bond itself, read in the light of the statute, indicates a less or different measure."

In the case of City of Paducah v. Jones, 104 S. W. 971, l. c. 975, the Court of Appeals of Kentucky said:

"The license is not a right that the applicant may demand and have for the asking. It is a mere privilege that the authorities may or may not give in their discretion. It cannot be successfully maintained that the requirement of the execution of a bond that the licensee will observe the law is an unreasonable condition. On the contrary, it is not only a reasonable, but a proper, condition, the imposition of which exercises a restraining influence and has a tendency to compel an observance of the law. The licensee who intends to obey the law cannot object to giving surety for his good behavior, while the applicant who contemplates its violation will find his way beset with more than ordinary trouble. In fact, he takes the license subject to all the laws in force regulating or prohibiting the sale of liquor, and they become a part of the license. The bond executed by the licensee is nothing more than security that he will obey the law. The sureties in the bond bind themselves that he will do this. It is on their part a contract obligation; and, if the bond is broken, as between them and the licensing authorities, they are liable for the sum stipulated in it. The question of the amount of damages

caused by the violation of the law by the principal does not, and cannot, enter into the question. It is not contemplated that the recovery should be for any less sum than that fixed. It would be totally impracticable if not impossible in any action by the city on the bond to arrive at any measure of damage, except the amount stipulated. In any action upon a bond properly executed, the only legitimate subject of inquiry is whether or not the conditions of the bond have been broken. If it has, the sureties by the letter of their undertaking agree that they will pay a certain sum. [Clark v. Barnard, 108 U. S. 436, 2 Sup. Ct. 878, 27 L. Ed. 780; State v. Corron, 73 N. H. 434, 62 Atl. 1044.] Nor will the bond be satisfied by the payment of the fine imposed in criminal proceedings against the principal. It is an independent obligation exacted as additional protection to compel an observance of the law, and the sureties are bound by the terms of their undertaking to pay the full amount specified if its conditions have been broken. The requirements of a bond with surety in a fixed sum would be almost a useless formality if it could be satisfied by the payment of a fine entered against the principal. This idea is not embraced either in the letter or meaning of the bond. There is no mention that the satisfaction of the fine will discharge it. The collection of the penalty is a matter between the municipality and the offender, and the sureties have no concern in its payment, and are not responsible for it.''

[See, also, Albany v. Cassel (Ga.), 76 S. E. 105; Commonwealth v. Moeschlin (Pa.), 170 Atl. 119; Quintard, Treas., v. Corcoran et al., 50 Conn. 34; United States v. Engelberg, 2 Fed. (2d) 720; State v. Vending Machine Corp., 51 Pac. (2d) 724, 174 Okla. 603. *Contra,* State v. Estabrook, 29 Kan. 739.]

It is to be noted that Section 13-a, in speaking of the bond, provides that ''any violation of such conditions, duties or requirements shall be a breach of said bond.'' Of course, if the condition of a bond is breached, it necessarily follows that the obligee is entitled to be paid damages. In this case we think the damage recoverable is the face of the bond; it was required and given to secure performance by means of a forfeiture, and for that reason it is an aid to the State in enforcing its laws. We hold that a sale of whiskey by a licensee holding only a five per cent liquor license, as admitted by the stipulation, is a breach of the condition of the bond and that the State may recover the full amount thereof without proof of damages, for it would be impossible for the State to prove that it suffered any pecuniary damage by an illegal sale of whiskey to a liquor inspector.

The respondents tacitly admit that this is the law, provided the bond is only for the observance of the law, for in their brief they say: ''From a review of all of the authorities on the subject under consideration, including those relied upon by appellant in its brief, it may be concluded, we think, that if the bond is conditioned for the observance of some law of the sovereign, and nothing more, the

measure of recovery for breach, unless the bond, or the statute under which it was given, indicates that a less, or different, measure was intended, is the full penalty of the bond, because it is regarded as the punishment fixed by the sovereign for the violation of law.''

It follows from what we have said that the trial court erred in its ruling, unless the respondents can be sustained on the constitutional questions which they have raised and which we will now discuss.

■ The respondents contend that the Liquor Control Act is unconstitutional for the reason that it does not comply with Section 28 of Article IV of our State Constitution which provides: ''No bill . . . shall contain more than one subject, which shall be clearly expréssed in its title.'' They contend that the title descends in particulars concerning the control of the sale of intoxicating liquor, and that there is no reference to the exaction of bonds from licensees.

Assuming, without deciding, that respondents are correct in this contention, still the title does contain this clause, ''and providing penalties for the violation of this act,'' which we think is sufficient to cover a bond given under Section 13-a. We have held above that a bond given under this section is one for penal damages, not for actual damages sustained, and, therefore, comes within the clause of the title just quoted. Respondents on another point in their brief say, ''If the bond is construed as a forfeiture bond, as appellant contends, and if the penal sum is due at once upon any breach, the for-feiture of the bond is in the nature of a fine or penalty.''

Under these facts the case of Fidelity Adjustment Co. v. Cook, 339 Mo. 45, 95 S. W. (2d) 1162, is not in point. In that case, civil liability was sought to be imposed upon the directors of a corporation whose charter had been forfeited under an act of the Legislature. The title descended to particulars. It was sought to uphold the title upon the word ''penalties.'' We held that since the act twice used the word ''penalties,'' meaning punishment for crime, any inference of the imposition of a personal civil liability was negatived. We are also of the opinion that the title to this act comes within the ruling of the case of Graves v. Purcell, 337 Mo. 574, 85 S. W. (2d) 543.

■ Respondents also contend that if the bond in question is a forfeiture bond, then this section violates Section 25, Article II of our State Constitution, which provides ''that excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.'' In effect, they contend that if a licensee is guilty of a misdemeanor under this act and is fined from $50 to $1000, and forfeits $2000 for breach of bond, then the above section of the constitution is violated. They have cited no case in point, nor does our research find any. The only case they rely upon is the case of United States v. Choteau, 102 U. S. 603, 26 L. Ed. 246. That case was a suit upon a bond given by a distiller who had violated the revenue laws. Under an act of Congress, he compromised the Government claim in a criminal prosecution. Later, this suit on the bond

was filed and the court held that the compromise was a complete defense to the action on the bond.

The liability on the bond arises out of a contract between the licensee and the State wherein the licensee agrees to faithfully obey the liquor laws of this State and agrees that in the event he does not do so he will forfeit the face of his bond to the State. Both appellant and respondents agree that the liability on the bond is not contingent on a criminal conviction of the licensee. The authorities so hold. [See Granger v. Hayden (R. I.), 20 Atl. 833; State v. Pierce, 26 Kan. 777; State ex rel. Canyon County v. Forch (Idaho), 146 Pac. 110.]

"Those authorities also establish the fact that the liquor traffic is not a lawful business, except as authorized by express legislation of the State; that no person has the natural or inherent right to engage therein; that the liquor business does not stand upon the same plane, in the eyes of the law, with other commercial occupations. It is placed under the ban of law, and it is therefore differentiated from all other occupations, and is therefore separated or removed from the natural rights, privileges, and immunities of the citizen." [State v. Parker Distilling Co., 236 Mo. 219, l. c. 255, 139 S. W. 453.]

Assuming, without deciding, that the forfeiture of the bond in question is a criminal or *quasi*-criminal penalty so as to come within the above constitutional inhibition, we could not say that the punishment "would shock the mind of every man possessed of common feeling." [State v. Williams, 77 Mo. 310.]

Nor do we think this act in any way violates the equal protection clause of the Federal or State Constitution because it does apply equally to all inhabitants of this State who engage in the sale of liquor by the drink.

For the reasons stated above, the judgment of the Circuit Court is reversed and remanded with directions to the trial court to enter a judgment in conformity with this opinion for the appellant in the sum of $2000. All concur.