LYMAN W. FORGRAVE, Appellant, v. BUCHANAN COUNTY.

Division One, June 2, 1920.

1. **CONSTITUTIONAL LAW:** Attitude of Courts. Unless the conflict with the Constitution is so plain as to be beyond reasonable doubt, an act of the General Assembly will be held to be constitutional and valid.

2. ————: **Title: One Subject: Justice of Peace.** If all the provisions of an act fairly relate to the same subject, have a natural connection with it and are the means or incident of accomplishing it, then the subject is single; and a title which reasonably foreshows these provisions is sufficient. So that a title reading, "An Act entitled justice of the peace in townships containing seventy-five thousand inhabitants and not over one hundred and fifty thousand inhabitants," is sufficiently comprehensive to contain provisions for four justices of the peace in the township, that they shall be paid a salary by the county, that their fees shall be turned over to the county, that they shall give a bond for so doing, that each shall appoint a clerk to be paid by the county, and that each shall be furnished an office and necessary records and blanks by the county; for all those things relate to one subject, and all are germane to the title.

3. ————: **Local and Special Law.** An act which includes all townships "which now contain or may hereafter contain 75,000 or less

than 150,000 inhabitants," is not a special or local law, but is general in its application, although at the time of its enactment there was only one township in the State to which it could apply.

4. ———: **Partial Repeal of General Law.** The enactment of a general· law putting justices of the peace upon a salary in all townships of a designated population is not a partial repeal of a general law, although, because of it, the old general law relating to justices of the peace in all townships will be no longer, operative in such townships.

5. ———: **Increase of Compensation: Change from Fees to Salary.** A mere change of· an officer's compensation from fees to a salary during his term is not violative of the constitutional provision that "the compensation or fees of no state, county or municipal officer shall be increased during his term of office;" for compensation dependent on the fees collected was uncertain. In order for such an act to be unconstitutional it must appear, as a matter of law, on the face of the act itself, that the salary is an increase in his compensation.

6. **ACT OF 1915: Applicable to Justice in Office.** The act placing justices in certain townships on a salary is not made inapplicable to justices in office at the time of its enactment by the words requiring each justice "before entering upon the duties of his office" to give bond to pay over all moneys received by him.

7. ———: **Clerk Hire.** The Act of 1915, Laws 1915, page 324, declaring that each justice of the peace in townships containing a certain population shall receive a salary of $2000 a year, payable monthly out of the county treasury, and that the county court shall provide each with "a clerk, to be designated by the justice of said court, at a salary of $75 per month," does not require the justice to pay the clerk, or the clerk's salary to be paid to the justice, and he is ,not entitled to sue for the clerk's salary.

Appeal from Buchanan Circuit Court.—*Hon. L. A. Vories,* Judge.

REVERSED AND REMANDED.

*Graham & Silverman* and *Strop & Mayer* for appellant.

(1) All intendments are in favor of constitutionality. Before an act will be held invalid its necessary and unavoidable effect must be to violate the Constitution. Green County v. Lydy, 263 Mo. 87; State ex rel.

v. Fort, 210 Mo. 526; State ex rel. v. Aloe, 152 Mo. 477; Railway Company v. Brick Co., 85 Mo. 332; State ex rel. v. Ransom, 73 Mo. 95. (2) The title of the act is sufficient. All matters contained within the act are germane, and the title is appropriate and sufficient. In the Matter of Burris, 66 Mo. 442; State ex rel. v. Williams, 232 Mo. 75; State ex rel. v. County, 128 Mo. 441; State ex rel. v. Ransom, 73 Mo. 86; State ex rel. v. Miller, 100 Mo. 444; Lynch v. Murphy, 119 Mo. 171; Elting v. Hickman, 172 Mo. 237; O'Connor v. Trust Co., 198 Mo. 633. (3) The act is applicable to all townships now or hereafter having the required population, and is not a special or local law. State ex rel. v. Williams, 232 Mo. 76; State ex rel. v. Fort, 210 Mo. 531; State ex rel. v. Wofford, 121 Mo. 368; Ex Parte Loving, 178 Mo. 211; Humes v. Railway, 82 Mo. 221; State ex rel. v. County Court, 128 Mo. 443; Ex parte Lucas, 160 Mo. 236; State ex rel. v. Miller, 100 Mo. 447; State ex rel. v. Yancy, 123 Mo. 391; State ex rel. v. Ins. Co., 150 Mo. 113. (4) Respondent should not be permitted to question the constitutionality of said act. State ex rel. v. Williams, 232 Mo. 75.

*Randolph & Randolph* for respondent.

(1) The title to the act does not conform to the Constitutional requirement. Art. 4, Sec. 28, Mo. Constitution; State v. Parker Distilling Co., 37 Mo. 103; Williams v. Railroad, 233 Mo. 676; State v. Tea & Coffee Co., 171 Mo. 642; State ex rel. v. K. C. Park District, 102 Mo. 531; State ex rel. v. Revelle, 257 Mo. 538; St. Louis v. Wurtman, 213 Mo. 131; State v. Sloan, 258 Mo. 313; State v. McEniry, 269 Mo. 228; State ex rel. v. Gordon, 233 Mo. 387. (2) The act is local and special where a general law can be made to apply. Clauses 18, 32 and 33, Art. 4, Sec. 53, Mo. Constitution; State ex rel. v. Roach, 258 Mo. 541; State ex rel. v. Borden, 164 Mo. 221; State ex rel. v. Messerly, 198 Mo. 351; Henderson v. Koenig, 168 Mo. 356; State v. Hill, 147 Mo. 67; State v. Granneman, 132 Mo. 331. (3) The act is an attempt to partially repeal a

general law by the enactment of a local and special law. Clause 33, Art. 4, Sec. 53, Mo. Constitution. (4) The act does not apply to the justices elected in November, 191.' (5) Plaintiff cannot recover for salary of clerk. (6. The duties of the county court under the act are *quasi*-judicial. not ministerial. State ex rel. Forgrave v. Hill, 198 S. W. 844; State ex rel. v. West, 255 Mo. 336.

· SMALL, C.—Appeal from the Circuit Court of Buch. anan County. This suit by appellant, a justice of the peace of Washington Township, Buchanan County, is to recover his salary at the rate of $2,000 per annum from respondent, under the act of the Legislature of 1915 (Laws 1915, p. 324), and also to recover clerk hire at the rate of $75 per month, under said act.

Prior to the institution of this suit, appellant had brought a suit in mandamus to compel the judges of the county court of said county to order a warrant issued for the services now sued for. This court held mandamus would not lie, and plaintiff's remedy, if any, was by suit against the county. [State ex rel. v. Hill, 198 S. W. 844.] Subsequently, this suit was brought.

The defense set up in the answer, besides a general denial, was that the act is unconstitutional in that it violated the Constitution of the State in the particulars to be noticed in this opinion. The lower court held with the defendant, and plaintiff appealed to this court.

The act in question, including the caption and title, is as follows:

"[H. B. 106.]

"JUSTICES' COURTS—ORGANIZATION AND PROCEDURE: Justices in' Townships Containing Seventy-five Thousand and not Over One Hundred and Fifty Thousand Inhabitants.

"*An Act entitled justice of the peace in townships containing seventy-five thousand inhabitants and not over one hundred and fifty thousand inhabitants.*

Forgrave v. Buchanan County.

"Section

"1. Salary and number of justices of the peace.

2. Justice of the peace to give bond.

3. County court may require new bond.

4. Fees to be paid into the county treasury.

"Section

5. Penalty for noncompliance with provisions of this article.

6. County may sue on bond of justice of peace.

7. County to provide office—appointment of clerk and payment of salary.

"*Be it enacted by the General Assembly of the State of Missouri, as follows*:

"Section 1. **Salary and number of justices of the peace**—In all townships which now contain or may hereafter contain seventy-five thousand inhabitants and not over one hundred and fifty thousand inhabitants according to the last decennial census there shall be four justices of the peace and each shall receive a salary of two thousand dollars per annum, payable monthly out of the treasury of the county in which he is elected.

"Sec. 2. **Justice of the peace to give bond**—Each justice of the peace shall, before entering upon the duties of his office, give bond to the State of Missouri, with two good and sufficient sureties, residents of the county, in the penal sum of two thousand dollars, conditional that he will account for and pay to the proper officer all the money received by him by virtue of his office; said bond to be approved by the county court, or the clerk in vacation, and if taken by the clerk in vacation it shall be approved or rejected by the court at the next term.

"Sec. 3. **County court may require new bond**—Whenever any surety shall die, remove from the county or become insolvent, or when from any other cause the county court shall have reason to believe that the sureties to a justice's bond are likely to become or have become insufficient, the court shall require the justice, at a time to be fixed, to show why a new bond shall not be required and unless cause to the contrary be shown, the justice of the peace shall be required within a given time to give a new bond; and in default thereof the office shall be vacant, which shall be filled as now provided by law for filling vacancies in office of the justice of the peace.

"Sec. 4. **Fees to be paid into the county treasury**—Each justice of the peace shall pay over all fees collected for his services to the treasurer of the county in which he is elected every thirty days, accompanied by a statement thereof sworn to by him, and all other costs collected by said justice of the peace shall be 'paid by him every thirty' days, accompanied by like sworn statement, to the constable of his district, who shall be responsible for the same and pay over the same to the parties entitled thereto, as is now required by law in cases of costs collected by or paid to said constable.

"Sec. 5. **Penalty for noncompliance with provisions of this article**—Upon failure or neglect of any justice of the peace to comply with the provisions of this article, within five days from the time provided for paying over said costs and filing said statement, he shall be guilty of a misdemeanor, and shall forfeit his salary for and during such time that he fails to make such statement, as provided in section four of this article; and should he further fail and neglect to pay over said costs and file said statement for a period of thirty days from the time required for filing the same, he shall forfeit all his right and claim to said office of justice of the peace, and the same shall be filled as now provided by law for filling vacancies in the office of justice of the peace.

"Sec. 6. **County may sue on bond of justice of peace**—Any such county shall sue for and recover all sums of money payable into the treasury thereof by any justice of the peace, and the sureties on his official bond shall be liable therefor.

"Sec. 7. **County to provide office—appointment of clerk and payment of salary**—Said county shall provide proper offices for said justice courts and for the proper care of the same, and shall provide light, heat, proper books of accounts, dockets, and printed forms of writs, and stationery, and whatever else may be deemed necessary by the county court of said county, for the proper conduct and the business of such court, including a clerk thereof, to be designated by the justice, at a salary of seventy-five dollars per month, payable at the end of each month out of the treasury of such county.

"Approved March 23, 1915."

I. It is true, the power to declare an act of the Legislature null and void, because it infringes upon provisions of the Constitution of the State or of the United States, is, by reason of our system of government, vested in the courts. But great care and caution has always been used in the exercise of this high prerogative. We have accordingly laid it down, as a rule, that unless the conflict with the Constitution is so plain that it is beyond reasonable doubt, the act would be held constitutional and valid. [Greene County v. Lydy, 263 Mo. l. c. 87, and cases cited.] With this rule in mind, therefore, let us compare the provisions of the Constitution with the provisions of the law, in question, and see whether they conflict with each other beyond such reasonable doubt.

*Presumption.*

II.  First, as to the title to the act.  An examination of the original bill, as it was passed by the Legislature and approved by the Governor, shows that the head notes and index to the sections, above copied, were not part of **Title.**  the bill, but were placed there afterwards when the bill was printed in the session acts.  Therefore, we can only consider the title proper, which is as follows:

"An Act entitled justice of the peace in townships containing seventy-five thousand inhabitants and not over one hundred and fifty thousand inhabitants."

The constitutional provision, as to the title and subject matter of legislative acts, is as follows:

Section 28 of Article IV: "No bill . . . shall contain more than one subject, which shall be clearly expressed in its title."

The objection that acts of the Legislature conflict with this constitutional provision has frequently been passed upon by this court, but the title and acts involved are so variant. that little aid can be had by referring to the adjudicated cases.  But the guiding principle has been firmly established.  As to singleness of the subject, the rule has been stated as follows: "The test is that 'when all the provisions of a statute fairly relate to the same subject; have a natural connection with it, are the incident or the means of accomplishing it, then the subject is single.'" [Elting v. Hickman. 172 Mo. 1. c. 252.]  As to the expression of the subject-matter in the title, the rule has been stated as follows: "The constitutional mandate in regard to the title of a statute does not require a table of contents as a caption to a law.  It is sufficient if the title does not mislead as to the general topic of the act. and that the minor features of it have a reasonable and natural connection with the subject named in the title.  [Citing authorities.]  Mere generality in the title will not vitiate an act of the General Asembly, unless the title is of such a nature as to compel the conviction that it was designed to mislead as to the subject dealt with." [State ex rel. v. County Court, 128 Mo. 1. c. 441.]

Forgrave v. Buchanan County.

Under the liberal rules thus announced, we think the title to the act before us sufficiently shows that the act will provide generally for justices of the peace, which would include provisions generally for justice courts, their organization and procedure in townships containing 75,000 and not over 150,000 inhabitants, and that all the provisions in the act relate to that one subject. The provisions for four justices of the peace in such townships; that they should have a salary; that it should be paid by the county; that their fees should be turned over to the county; that they should give bond for so doing; that there should be a clerk of the justice's court, to be approved by the justice and paid by the county, etc., are at matters relating to justices of the peace and incident to the maintenance and operation of their courts. So, with the furnishing the justice with an office and supplies. In State ex rel. v. Williams, 232 Mo. 1. c. 75, this court said: "The act in question not only amends a statute which prescribed what fees should be paid to the various prosecuting attorneys throughout the State, and fixes the fees of those in the counties to which the act applies, but also creates the office of assistant prosecuting attorney in those same counties, provides for the manner of their appointment and fixes the amount of their salaries. While the question of creating an office and prescribing the manner of appointing the officer thereto is different from the question of prescribing the fees to be paid such officer: however, the one is germane to the other and so close connected therewith that we are unable to say that they constitute two separate and distinct subjects within the meaning of said constitutional provision." [Citing many cases.]

We not only think the act before us contains but one subject, but that there are no provisions in it not germane and naturally connected with that subject, as expressed in the title, and that, therefore, the subject is clearly expressed in the title, within the meaning of the Constitution in that regard.

III. It is contended that the act is contrary to Section 53 of Article IV of the Constitution, prohibiting the passage of a local or special law for any of the following purposes: Clause 18, "Regulating the fees or extending the powers and duties of aldermen, justices of the peace, magistrates or constables," and Clause 32, "Legalizing the unauthorized or invalid acts of any officer or agent of the State, or of any county or municipality thereof. In all other cases where a general law can be made applicable, no local or special law shall be enacted; and whether a general law could have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on that subject."

Special Law.

The contention of learned counsel is that the act only applies to one township in the State, to-wit, Washington Township, Buchanan County, because that was the only township in the State which had 75,000 or less than 150,000 inhabitants, when the act was passed and took effect. But the language of the act does not limit its operation to townships that have that population at the time of its passage, but includes all townships "which now contain or may hereafter contain 75,000 or less than 150,000 inhabitants." It is well settled that this language takes the law out of the category of a special or local law and makes it a general law, so as not to conflict with the constitutional provisions against special and local laws pointed out by the respondent.

In State ex inf. v. Aetna Ins. Co., 150 Mo. l. c. 135-6, the court says: "The proviso relates to fire insurance in cities of a class, that is, cities in this State which now have or which may hereafter acquire a population of one hundred thousand inhabitants or more, and while there are but two of such cities in this State at this time, St. Louis and Kansas City, it has been repeatedly held by this court that such a law is general and not special. [Ewing v. Hoblitzelle, 85 Mo. 64; Rutherford v. Heddens, 82 Mo. 388; State ex rel. v. Herrmann, 75 Mo. 340; Kelly v. Meeks, 87 Mo. 396; Rutherford v.

Hamilton, 97 Mo. 543; Lynch v. Murphy, 119 Mo. 163.]'' Same ruling in the recent case of State ex inf. v. Southern, 265 Mo. l. c. 286-7.

But learned counsel say that the real intent of the Legislature was to limit the act to the one township in Buchanan County and cite especially, Henderson v. Koenig, 168 Mo. 356, and State ex rel. v. Messerly, 198 Mo. 351, as so holding. An examination of those cases will show that the language in the act before us, "or hereafter having 75,000 inhabitants and less than 150,000 inhabitants," or equivalent language, making the law general in its application, was absent from the acts construed in those cases. Indeed, in these cases, there were special features and provisions in the act itself which showed clearly an affirmative intent to limit the operation of the law to a certain territory, which is not the case here. We must rule this point, too, against respondent.

IV. Nor does the act violate Clause 33, Article IV, of Section 53, of the Constitution, which provides: "Nor shall the General Assembly indirectly enact such special or local law by the partial repeal of a general law." Here, there is no partial repeal of a general law, so as to create a special law. It is true, the old general law relating to justices of the peace no longer governs in townships now or hereafter having the specified population, but the act in question leaves the old general law in force in all other townships in the State, except in the townships provided for by this act, which, we hold, is a general law governing such townships.

*Partial Repeal.*

V. It is also contended that the act violates Section 8 of Article XIV of the Constitution, which provides: "The compensation or fees of no state, county or municipal officer shall be increased during his term of office." The change of an officer's compensation during his term of office from a fee basis to a salary is not necessarily an

*Increase In Compensation.*

increase of his compensation. It may be a decrease, and frequently is.

The evidence introduced in this case showed that the fees earned by the plaintiff as justice, during the time sued for somewhat exceeded the salary prescribed by the act for that period, but that the fees actually collected did not quite equal such salary. But in the view we take that question is not material. The fees were not fixed sums to be paid by the public, like unto a salary, which he was sure to receive, but were to be paid by the litigants and the compensation received by him depended upon the amount of the fees collected which was necessarily, more or less, uncertain. In such cases it has been held, that a law changing from a fee basis to a salary, by requiring the fees to be turned over to the county, and the county to pay a fixed salary, does not necessarily increase the officer's compensation, contrary to such constitutional provision, and will not be so held unless it appears, as a matter of law, on the face of the act itself, that the officer's compensation is thereby increased. If not, it will be conclusively presumed that the Legislature investigated the facts and ascertained that by the change from the fee basis to the salary prescribed, no increase would be made in the compensation of the officer. [Galeener v. Honeycutt, 173 Cal. l. c. 103, et seq.; State ex rel. v. Ericksen, 120 Wis. l. c. 442; State ex rel. v. Grimes, 7 Wash. 445.]

While this court has never before passed upon the question, we deem the above ruling to be sound, and it meets with our approval.

VI. It is next argued that the act does not apply to justices in office at the time the act took effect, because it provides that (Section 2) "each justice of the peace shall before entering upon the duties of his office, give bond to the State," etc., that he will pay over all moneys received by him. The whole act shows that it is to govern all justices of the peace, those in office, as well as those subsequently to be elected or appointed. The language quoted means

**Immediate Effect.**

that before entering upon his duties as justice, under the act, each justice shall give bond, etc. He could not enter upon his duties, under the act, until it took effect, and it was intended he should then and thereafter turn over his fees, give bond to secure his obligation so to do, and receive a salary. We must rule this contention also against respondent.

VII. We sustain the respondent's contention that plaintiff is not entitled to the clerk hire sued for. The Clerk's Pay. statute does not require the justice to pay the clerk, if there is one, nor require the salary of the clerk to be paid to the justice.

The judgment is, therefore, reversed, and the cause remanded for a new trial in accordance with the views herein expressed. *Brown* and *Ragland, CC.,* concur.

PER CURIAM:—The foregoing opinion of SMALL Co., is adopted as the opinion of the court. All of the judges concur except *Woodson, J.,* absent.