W. W. GRAVES, Prosecuting Attorney of Jackson County, v. EUGENE I. PURCELL, BATTLE McCARDLE and J. W. HOSTETTER, Members of the County Court of Jackson County, Appellants.—85 S. W. (2d) 543.

Court en Banc, July 30, 1935.

*John B. Pew* and *Rufus Burrus* for appellants.

576

*John T. Barker* and *Frank Brockus* for respondent.

COLES, J.—This is a suit instituted in the Circuit Court of Jackson County by the respondent as Prosecuting Attorney of Jackson County seeking to enjoin the appellants as members of the county court of Jackson County from proceeding to enforce and put into effect Sections 9 to 21, both inclusive, of an act of the General Assembly designated as the "County Budget Law" on the ground that the sections of the act mentioned contravene certain specified provisions of the Constitution of Missouri. After the filing of the original petition the trial court granted a temporary restraining order. Later, by leave of court, respondent filed an amended petition and appellants filed a motion to dissolve the temporary restraining order and also a demurrer to the amended petition. The trial court overruled both the motion to dissolve the temporary restraining order and the demurrer. Appellants elected to stand upon their demurrer and the overruling of their motion to dissolve the temporary restraining order and thereupon the court below entered a final decree granting a permanent injunction substantially as prayed. Thereupon appellants in due course perfected an appeal to this court.

Appellants contend that respondent, as the Prosecuting Attorney of Jackson County, has no legal standing to enjoin the enforcement of the statute here in question and also that injunction is not the proper remedy to arrest the execution and enforcement of the act. The petition filed in the circuit court, among other things, alleged in substance: that plaintiff is the duly elected, qualified and acting Prosecuting Attorney of Jackson County, Missouri, and brings this suit for and on behalf of the citizens and taxpayers of Jackson County; that defendants, purporting to act under the provisions of the act here involved, contemplate making expenditures of money

and making a levy of taxes to meet such expenditures which will obligate the property of the citizens and taxpayers of Jackson County and that before any such levy is made the constitutionality of this act should be determined; that unless defendants are enjoined from enforcing the questioned provisions of the act, irreparable damage and injury will result to the citizens and taxpayers of Jackson County and to their property; and that unless prevented the defendants will proceed to enforce the unconstitutional and void provisions of the act to the detriment, injury and damage of the citizens and property owners of Jackson County; that no adequate remedy at law is available and that unless the court issues its writ of injunction the citizens and property owners of Jackson County will be wholly without remedy.

██ It is of course a well-recognized and elementary general principle that courts have no power to enjoin public officers from taking action under an alleged unconstitutional statute unless they are about to do some act, which, if not authorized by a valid law, will constitute an unlawful interference with complainants' rights (14 R. C. L. 434, sec. 135). But in Missouri it seems to be well settled that the prosecuting attorney of a county is the representative of the sovereign or state within his county to such an extent as to authorize him to institute and maintain a suit on behalf of the property owners and taxpayers to enjoin the officers of the county from taking action under an unconstitutional law in instances where the threatened action will injuriously affect the property rights of the property owners and taxpayers generally and where, in the opinion of the court, no other adequate remedy is available. [State ex rel. v. Saline County, 51 Mo. 350; Rubey v. Shain, 54 Mo. 207; Matthis v. Town of Cameron, 62 Mo. 504; Ranney v. Bader, 67 Mo. 476; Ewing v. Board of Education, 72 Mo. 436, l. c. 440; State ex rel. v. Hughes, 104 Mo. 459, l. c. 471, 16 S. W. 489.] We are of the opinion that under the well-settled law of this State respondent was authorized to institute and prosecute the present suit.

The principal contention made here is that the "County Budget Law" (Laws 1933, p. 340) contravenes Section 28 of Article IV of the Constitution of Missouri which provides that "no bill . . . shall contain more than one subject, which shall be clearly expressed in its title." The title of the act here in question is as follows: "AN ACT to provide for a County budget placing certain duties upon the County Court of the several Counties of this State, upon the County Clerks, the County Treasurer, and State Auditor; authorizing the County Court to designate someone to prepare a budget estimate, providing that certain officers shall furnish certain information, providing for the time that such estimate shall be furnished, providing for the settling out of the estimated receipts and

expenditures, providing for the classification of expenditures and for priority of payment, giving to the County Court power to review such estimates, requiring the filing of such estimates with certain officers, providing certain penalties for the violation of the provisions of this act and repealing all laws in conflict herewith.'' The act under consideration contains twenty-two sections. The first eight sections of the act are applicable to counties ''having a population of 50,000 inhabitants or less'' and as we understand it the validity of these sections is not challenged here. Sections 9 to 20 of the act, both inclusive, are expressly declared to be applicable to counties ''having a population of more than 50,000 inhabitants,'' and the controversy here relates to the constitutional validity of the last mentioned sections. In order clearly to present the issues here in controversy it is necessary to set forth in substance the provisions of the several challenged sections of the act.

*Section 9.* The presiding judge of the county court shall be the budget officer of the county or the county court may designate the county clerk as budget officer.

*Section 10.* The annual budget of the county shall present a complete financial plan for the ensuing budget year. It shall set forth all proposed expenditures; the actual or estimated operating deficits or surpluses from prior years; all interest and debt redemption charges during the year and expenditures for capital projects; it shall also set forth in detail the anticipated income and other means of financing the proposed expenditures.

*Section 11.* On or before October 1, of each year, each department, office, institution or court of the county receiving its revenues in whole or in part from the county shall submit to the budget officer estimates of its requirements for expenditures and its estimated revenues for the next budget year compared with the corresponding figures for the last completed fiscal year and estimated figures for the current fiscal year. The expenditure estimates shall be classified as specified in the act. The estimated revenues shall also be classified as prescribed. In case of a failure to submit estimates the budget officer shall make the estimates. The budget officer shall review the estimates, altering, revising, increasing or decreasing the items as he shall deem necessary in view of the needs of the various spending agencies and the probable income for the year. The budget officer shall then prepare the budget document in the form prescribed by the act and transmit it to the county court. The budget officer shall have power to recommend and the county court shall have power to fix all salaries of employees, other than those of elective officers, except that no salary for any position shall be fixed at a rate above that fixed by law for such position. An amount not less than three per cent of the estimated general fund revenues shall

be appropriated each year to an emergency fund. The budget officer shall hold public hearings before preparing the budget document or before submitting it to the county court. All budget information shall be open to public inspection at any time.

*Section 12.* Prescribes the form of the budget document.

*Section 13.* Requires the county court to hold a public hearing on the proposed budget before final action is taken thereon and makes provision for giving notice of the proposed hearing.

*Section 14.* Authorizes the county court, after the budget hearing, to revise, alter, increase or decrease the items contained in the budget and to eliminate any item or add new items, but where an increase in a proposed expenditure is made that exceeds the estimated income, provision shall be made for the necessary additional income so that the budget as adopted shall provide revenue at least equal to the expenditures for each fund. Upon adoption of the budget the county court shall tentatively fix the rate necessary to finance and balance the budget.

*Section 15.* "If at the termination of any fiscal year the appropriations necessary for the support of the government for the ensuing year have not been made, the several amounts appropriated in the last annual appropriation order for the objects and purposes therein specified, so far as the same shall relate to operation and maintenance expenses, shall be deemed to be reappropriated for the several objects and purposes specified in said appropriation order; and until the county court shall act, the accounting officer shall authorize expenditures and draw warrants in payment thereof, and such warrants shall be countersigned and paid for the support of the government on the basis of such appropriation for the preceding fiscal year."

*Section 16.* Provides for the transfer "within the same fund" of unappropriated balances from "one spending agency under its jurisdiction to another" in certain instances.

*Section 17.* "The county court may borrow money in anticipation of the collection of taxes for the current fiscal year. The amount of such loans shall at no time exceed seventy-five per cent of the estimated collectible revenues for the year yet uncollected, and shall be paid out of the revenues for the year in which made. The county court shall determine the amount and terms of such loans."

*Section 18.* "Except as in this section otherwise specified, all offices, departments, courts, institutions, commissions, or other agency spending moneys of the county, shall perform the duties and observe the restrictions set forth in the preceding sections relating to budget procedure and appropriations. The estimates of the circuit court, including all activities thereof and of the circuit clerk, shall be transmitted to the budget officer by the circuit clerk. The estimates

of the circuit clerk shall bear the approval of the circuit court. The budget officer of the county court shall not change the estimates of the circuit court or of the circuit clerk without the consent of the circuit court or the circuit clerk, respectively, but shall appropriate in the appropriation order the amounts estimated as originally submitted or as changed, with such consent."

*Section 19.* "All contracts shall be executed in the name of the county by the head of the department or officer concerned, except contracts for the purchase of supplies, materials, equipment, or services other than personal made by the officer in charge of purchasing in any county having such officer. No contract or order imposing any financial obligation on the county shall be binding on the county unless it be in writing and unless there is a balance otherwise unencumbered to the credit of the appropriation to which the same is to be charged and a cash balance otherwise unencumbered in the treasury to the credit of the fund from which payment is to be made, each sufficient to meet the obligation thereby incurred and unless such contract or order bear the certification of the accounting officer so stating; *provided* that in case of any contract for public works or buildings to be paid for from bond funds or from taxes levied for the purpose it shall be sufficient for the accounting officer to certify that such bonds or taxes have been authorized by vote of the people and that there is a sufficient unencumbered amount of such bonds yet to be sold or of such taxes levied and yet to be collected to meet the obligation in case there is not a sufficient unencumbered cash balance in the treasury. All contracts and purchases shall be let to the lowest bidder after due opportunity for competition, including advertising the proposed letting in a newspaper in the county with a circulation of at least 500 copies per issue, if there be such, except that such advertising shall not be required in case of contracts or purchases involving an expenditure of less than $500, in which case notice shall be posted on the bulletin board in the court house. All bids for any contract or purchase may be rejected and new bids advertised for. Contracts which provide that the person contracting with the county shall, during the term of the contract, furnish to the county at the price therein specified the supplies, materials, equipment, or services other than personal therein described, in such quantities as may be required, and from time to time as ordered by the officer in charge of purchasing during the term of the contract, need not bear the certification of the accounting officer as herein provided; but all orders for such supplies, materials, equipment, or services other than personal shall bear such certification. In case of such contract, no financial obligation shall accrue against the county until such supplies, materials, equipment or services other than personal are so ordered and such certificate furnished."

*Section 20.* "The accounting officer shall be personally liable and liable on his bond for the amount of any obligation incurred by his erroneous certification as to the sufficiency of an appropriation or of a cash balance, or for any warrant drawn when there is not a sufficient amount unencumbered in the appropriation or a sufficient unencumbered cash balance in the fund to pay the same, or for the payment of any amount not legally owing by the county. Any officer purchasing any supplies, materials or equipment shall be liable personally and on his bond for the amount of any obligation he may incur against the county without first securing the proper certificate from the accounting officer. Such other officers as the county court may require shall each give surety bond in such amount as may be fixed by order of the county court for the faithful performance of his duties and for a correct accounting for all moneys and other property in his custody. The sufficiency of the sureties shall be approved by the county court. Any premium on such bonds shall be paid by the county."

*Section 21.* Defines "budget officer" as meaning presiding judge of the county court unless the county court shall have designated the county clerk as budget officer. Also defines "accounting officer" as meaning the county clerk, auditor, accountant or other officer or employee keeping the principal financial records of the county.

*Section 22.* Provides that "All laws or parts of laws and expressly Sections 9874, 9985 and 9986 insofar as they conflict are hereby repealed."

In determining the true meaning and scope of constitutional or statutory provisions the intent and purpose of the lawmakers is of primary importance. This court has consistently held that the intent and purpose of the framers of our organic law in providing that "no bill shall contain more than one subject which shall be clearly expressed in its title" was to limit the subject matter of the bill to one general subject and to afford reasonably definite information to the members of the General Assembly and the people as to the subject matter dealt with by the bill. [Kansas City v. Payne, 71 Mo. 159, l. c. 162; State ex rel. Wells v. Walker, 326 Mo. 1233, 34 S. W. (2d) 124, l. c. 131.] Apart from the basic principle just stated as to the general purposes sought to be achieved by the constitutional provision in question this court has recognized the impossibility of formulating any general rule or principle of universal application which can be safely applied to test the sufficiency of the titles of particular enactments and, in general, has given its sanction to the view that each case must be determined upon its own peculiar facts. [Witzmann v. Southern Railway Co., 131 Mo. 612, l. c. 618, 33 S. W. 181; State ex rel. v. Jackson County, 102 Mo. 531, l. c. 537, 15 S. W. 79.] Coming now to a consideration of

the "County Budget Law" here in question it must be observed that the title to the law contains language of very comprehensive import followed by other language of narrower meaning. The title of course must be considered as a whole but in order to develop the nature and merits of the various contentions made we will first discuss the more comprehensive language used and will later consider the effect which must be given to the language of narrower meaning. The initial words of the title are "An Act to provide for a county budget." We must take judicial notice of the fact that the word "budget" has a well-recognized general meaning. As applied to governments or governmental units a "budget" is a plan or method by means of which the expenditures and revenues are so controlled for a definite period, by some budgetary authority, as to effect a balance between income and expenditures. Of course budget laws may differ materially in their details but the essential and characteristic features of a budget law are as stated. In the act here under consideration that portion of the title following the initial words "An Act to provide for a county budget" sets forth in less comprehensive terms some of the particulars of the statute. We must determine the effect of the particulars set forth in the light of the cardinal principle before stated that the purpose of Section 28 of Article IV of our Constitution is to limit the subject matter of the bill to one general subject and to afford reasonably definite information to the members of the General Assembly and the public as to the subject matter dealt with by the bill. Where the title to a bill contains comprehensive language followed by particulars of less comprehensive scope there can be no question that as to all details within the scope of the narrower language employed the provisions of the bill must be confined to the limits of the narrower language contained in the title. [State ex rel. v. Hackmann, 292 Mo. 27, 237 S. W. 742; State v. Crites, 277 Mo. 194, 209 S. W. 863.] In some instances the particulars set forth in the title expressly or by necessary implication restrict the meaning and scope of more comprehensive language contained in the title and in such instances it is clear both upon principle and authority that the provisions of the bill must be confined within the limits of the particulars specified. [State ex rel. v. Hackmann, supra; Vice v. Kirksville, 280 Mo. 348, 217 S. W. 77; Woodward Hardware Co. v. Fisher, 269 Mo. 271, 190 S. W. 576.] But in instances where the title to the bill descends into particulars which are neither expressly nor by necessary implication restrictive of the general purpose of the bill as set forth in its title, but are merely descriptive of some of the instrumentalities or means to be employed in effectuating the general purpose of the bill as declared in its title, there is no constitutional barrier to the inclusion in the bill of provisions which are germane to and within the scope of the

general purpose of the bill as declared in its title and which, although not set forth in the particulars expressed in the title, are not out of harmony with them. [State ex rel. v. Buckner, 308 Mo. 390, 272 S. W. 940; State ex rel. v. Terte, 324 Mo. 402, 23 S. W. (2d) 120; State ex rel. v. Williams, 232 Mo. 56, 133 S. W. 1; State ex rel. v. Miller, 100 Mo. 439, 13 S. W. 677.] Although the general principles just indicated have not heretofore been enunciated by this court in precisely the terms we have here employed we think the general views here expressed have been fully sanctioned by the decisions of the court. Before proceeding to the consideration of the specific reasons urged in support of the contention that the statute here in question violates the provisions of Section 28 of Article IV of the Constitution we deem it appropriate to advert to certain fundamental principles which must be applied by us in properly determining the controverted issue. ■ There is a presumption that the statute here assailed is constitutional. The burden rests upon the party questioning the constitutional validity of a statute to establish its unconstitutionality beyond a reasonable doubt and if its constitutionality remains in doubt, such doubt must be resolved in favor of its validity. [State ex rel. v. Terte, 324 Mo. 402, 23 S. W. (2d) 120; Forgrave v. Buchanan County, 282 Mo. 599, 222 S. W. 755.] This court has long been committed to the principle that Section 28 of Article IV of our Constitution must be liberally construed. [State ex rel. v. Buckner, 308 Mo. 390, 272 S. W. 940; State v. Mullinix, 301 Mo. 385, 257 S. W. 121.] A liberal construction of the constitutional provision in question requires that such construction be fair, reasonable and rational, to the end that legislative action shall not be thwarted and nullified by the courts by a resort to undue subtleties and refinements or extreme and artificial formalism.

■ It is first urged by respondent that the "County Budget Law" violates Section 28 of Article IV of the Constitution because the bill "contains more than one subject," and that the subject is not "clearly expressed" in the title. In support of this view it is said that Section 11 of the act authorizes the county court to fix the salaries of all county employees other than elective officers; that Section 17 of the act authorizes the county court to "borrow money in anticipation of the collection of taxes for the current fiscal year;" that Section 19 provides for the execution of contracts with the county and attempts to limit the purchase of supplies, materials or equipment; that Section 19 assumes to limit the liability of the county to persons who furnish supplies, materials, equipment or services to the county when not ordered and certified as required by the act; and that Section 20 authorizes the county court to require county officers to give bond for the faithful performance of their duties

and assumes to impose personal liability upon county officers for failure to perform their prescribed official duties. It is contended that none of these provisions are germane to the purpose of the act as set forth in its title. This view we think is not tenable. The primary and comprehensive purpose of the act in our opinion was "to provide for a county budget." No statute could provide adequately and effectively for a budget without setting up a budgetary authority vested with considerable power to control both expenditures and revenue. A proper control over expenditures and receipts is the characteristic and essential feature of a governmental budget. Without a proper measure of control the budgetary procedure would be ineffective and would fail to attain the salutary purpose sought. In the instant case we think that all of the sections of the act complained of are germane to the declared purpose of the statute "to provide for a county budget" and that the provisions of the statute deal with but a single subject. The power conferred upon the county court by Section 17 of the act to "borrow money in anticipation of the collection of taxes for the current year" is perhaps less directly related to normal budgetary procedure than the other questioned provisions of the statute, but we think it had such a relation to the raising of revenue as to make it germane to the general purpose of the act. We may notice judicially that the greater part of county revenue is paid annually near the end of the year while county expenditures must be made currently throughout the year. For this reason it is often necessary or desirable for county authorities to "borrow money in anticipation of the collection of taxes" for the purpose of meeting current expenses and in the case of many counties this practice has long been sanctioned by statute. [R. S. 1929, secs. 2097-2106.]

It is further urged by respondent that the statute is not in harmony with the title for the reason that the title specifies that the county court is authorized "to designate someone to prepare a budget estimate" yet Section 9 of the act provides that "the presiding judge of the county court shall be the budget officer" thus leaving no power in the court to make the designation suggested in the title. But, in our opinion, this view is untenable because it fails to take account of all the relevant provisions of the act. Section 9 provides that "the presiding judge of the county court shall be the budget officer of such county, or the county court in any such county may designate the county clerk as budget officer." Certainly the authority conferred upon the county court to designate the county clerk to prepare a preliminary budget estimate is an authority to designate "someone" to perform that duty and the suggestion made by respondent is too narrow to meet with our approval.

586

Our general conclusion upon the particular phase of this case here under discussion is that the act here in question deals with a single general subject namely "a county budget" and that this subject is clearly expressed in the title. Every provision of the act fairly relates to, and has a natural connection with the subject expressed in the title and therefore falls within the title. It is unimportant "that some provisions of the act are not specifically named in the title, or that by refinements of terminology the minutiae of the act can be separately catalogued." [State ex rel. v. Buckner, 308 Mo. 390, 272 S. W. 940; State ex rel. v. Slover, 134 Mo. 10, 31 S. W. 1054; State ex inf. v. Hedrick, 294 Mo. 21, 241 S. W. 402; Coffey v. Carthage, 200 Mo. 616, 1. c. 621, 98 S. W. 562; State ex rel. v. Williams, 232 Mo. 56, 1. c. 75, 133 S. W. 1; Booth v. Scott, 276 Mo. 1, 205 S. W. 633; State v. Mullinix, 301 Mo. 385, 1. c. 390, 257 S. W. 121; State ex rel. v. Terte, 324 Mo. 402, 23 S. W. (2d) 120; Forgrave v. Buchanan County, 282 Mo. 599, 222 S. W. 755.]

■ It is further contended that the requirement of Section 18 of the act that the county court shall have no authority to revise the estimates of expenditures submitted by the circuit court, and by the circuit clerk with the approval of the circuit court, but that in the case of these estimates shall appropriate the amounts estimated is violative of the provisions of Section 36 of Article VI of the Constitution which ordains that county courts shall "transact all county business" and also constitutes an unlawful delegation to the circuit court and the circuit clerk of the power to tax. We do not think that the section of the act here complained of grants to the circuit court or to the circuit clerk any power to expend money but merely provides for the payment to the court and its clerk of such expenditures as under existing law the court and its clerk may be entitled to make and which are chargeable to the county. As the circuit clerk is the ministerial officer of the circuit court the expenses of both may properly be regarded as expenses of the circuit court. Within the confines of constitutional limitations it was open to the Legislature to determine the policy to be followed in defining the scope of county budgetary control and procedure. It was certainly within the power and province of the Legislature to provide that in the matter of its lawful expenditures the circuit court should be free from the control of the county court. We need hardly add that the duties performed by the circuit court and the circuit clerk do not constitute "county business" within the meaning of Section 36 of Article VI of the Constitution. [State ex rel. v. Imel, 242 Mo. 293, 146 S. W. 799; Little River Drainage District v. Lassater, 325 Mo. 493, 1. c. 501, 29 S. W. (2d) 716.] We find no merit in the contentions that Section 18 of the statute is obnoxious to the provisions

of Section 36 of Article VI of the Constitution or that it unlawfully grants taxing power to the circuit court and the circuit clerk.

 It is earnestly contended by respondent that the title to the act under consideration was originally intended to cover only Sections 1 to 8 inclusive, and that during the consideration of the bill by the General Assembly Sections 9 to 22, inclusive, were added to the bill by amendment and that upon such amendment no change was made in the title to the bill. From this premise it is argued that the title to the bill is necessarily defective when measured by the requirements of the Constitution. But we are here called upon to consider the sufficiency of the title to the act as finally enacted and as we find that the act relates to a single subject which is clearly expressed in the title we conclude that the contention made is without merit. The respondent has made some other suggestions in support of his view that the statute here in question is invalid but after careful consideration of these suggestions we have concluded that they are without merit and hence we deem it unnecessary to discuss them. Our general conclusion is that the "County Budget Law" of 1933 is a valid statute and that the trial court erred in entering a decree enjoining its enforcement. It follows that the judgment of the trial court must be reversed. It is so ordered. All concur.