THE STATE, Appellant, v. OTTO KENNEDY.—123 S. W. (2d) 118.

Division Two, December 20, 1938.

788

*Roy McKittrick,* Attorney General, and *Franklin E. Reagan,* Assistant Attorney General, for appellant.

COOLEY, C.—Respondent, defendant below, was charged by information in the Circuit Court of Buchanan County with the unlawful sale of intoxicating liquor. He filed a motion to quash the information which the court sustained and the State appeals.

The motion to quash assails the constitutionality of Section 13a of the "Liquor Control Act," enacted by the Fifty-Seventh (1933) General Assembly at its Extra Session, approved by the Governor January 13, 1934, and found in "Laws of Missouri, Extra Session, 1933-1934" at pages 77 et seq. Said Liquor Control Act is a general and comprehensive statute relating to the regulation, control, manufacture, brewing, sale, possession, transportation and distribution of intoxicating liquor. Among other provisions it requires that a person selling intoxicating liquor must have a license, issued by the Supervisor of Liquor Control, and prescribes the qualifications to be possessed and the requirements to be met by the licensee in order to obtain the license. Said Section 13a reads:

"Sec. 13a. *Who may obtain license—sale of liquor by drink, where legal—bond.*—Any person who possesses the qualifications required by this act, and who meets the requirements of and complies with the provisions of this act, and the ordinances, rules and regulations of the incorporated city in which such licensee proposes to operate his business, may apply for and the Supervisor of Liquor Control may issue a license to sell intoxicating liquor, as in this act defined, by the drink at retail for consumption on the premises described in the application. *Provided,* that no license shall be issued for the sale of intoxicating liquor, other than malt liquor containing alcohol not in excess of five (5%) per cent by weight, by the drink at retail for consumption on the premises where sold, in any incorporated city having a population of less than twenty thousand (20,000) inhabitants, until the sale of such intoxicating liquor, by the drink at retail for consumption on the premises where sold, shall have been authorized by a vote of the majority of the qualified voters of said city. Such authority to be determined by an election to be held in said cities having a population of less than twenty thousand (20,000) inhabitants, under the provisions and methods set out in this act. The population of said cities to be determined by the last census of the United States completed before the holding of said election. *Provided further,* that for the purpose of this act, the term 'city' shall be construed to mean any municipal corporation having a population of five hundred (500) inhabitants or more. *Provided further,* that no license shall be issued for the sale of intoxicating liquor, other than malt liquor containing alcohol not in excess of five (5%) per cent by weight, by the drink at retail for consumption on the premises where sold, outside the limits of such incorporated cities. . . ."

[The remainder of the section deals with the bond required of the licensee and is not here pertinent.]

Summarized, said section authorizes the issuance of a license for sale by the drink at retail, for consumption on the premises, of intoxicating liquor, provided that such sales, except of malt liquor containing not more than 5 per cent of alcohol, may not be licensed in incorporated cities of less than 20,000 inhabitants until authority is given by affirmative vote of the inhabitants, and outside the limits of such incorporated cities such sales of intoxicating liquor, except malt liquor containing not more than 5 per cent alcohol, may not be licensed. For the purpose of the act "city" means a municipal corporation with 500 or more inhabitants. Thus, in unincorporated municipalities and in the rural districts and in cities, towns and villages of less than 500 population the sale of intoxicating liquor at retail, by the drink, for consumption on the premises, except malt

liquor containing not in excess of 5 per cent alcohol, may not be licensed; in the cities where issuance of license is conditioned upon a vote of the inhabitants, no such vote is required in order to authorize issuance of license for sale of malt liquor containing not in excess of 5 per cent alcohol; and in incorporated cities of more than 20,000 inhabitants no vote of the people is required in order to authorize issuance of license for the sale of any intoxicating liquor.

Respondent has not filed a brief in this court. In his motion to quash he mentions specifically and at length the statutory differences in the right to procure a license as between incorporated cities of 20,000 or more inhabitants and those of 500 to 20,000 inhabitants, and between incorporated cities of more than 500 inhabitants and cities, towns and villages of less than 500 and in rural districts, and says that because of such differences said Section 13a is discriminatory; that it is not uniform in its application; that it attempts ''to create local option as to the licensing of the sale of intoxicating liquor;'' that it authorizes the people of only a limited portion of the State . . . to avail themselves of it;'' that ''it is not co-extensive with the territorial limits of the State in respect to the powers attempted to be conferred or the burdens and restrictions attempted to be imposed;'' that it authorizes certain cities to have one kind of liquor control and denies to other cities and parts of the State the same kind of control; that it does not confer equal privileges upon all the people and upon all subdivisions of the State; and ''imposes unequal burdens and restrictions upon the people of the State and the various subdivisions thereof;'' for which reasons it is alleged said statute violates the provisions of the Fourteenth Amendment to the Constitution of the United States that no state shall deny to any person within its jurisdiction the equal protection of the laws, and also is in contravention of paragraph or subsection 32 of Section 53 of Article IV of the Constitution of Missouri, which prohibits the enactment of a local or special law where a general law can be made applicable. The circuit court held said Section 13a of the statute to be unconstitutional and sustained the motion to quash on that ground.

I. We will consider first the question whether or not said Section 13a is void as being in contravention of the invoked provision of our State Constitution.

The State has the undoubted right to regulate the sale of intoxicating liquor and it may prohibit it. In regulating such traffic reasonable classifications may be made. ''That the lawmakers have the right to make reasonable classifications of subjects, notwithstanding that some kind of a general law might be passed, is a matter of universal recognition in this State. A general law could be passed to cover any particular subject, yet it might not work out well in ac-

tual practice." [State ex rel. Daily Record Co. v. Hartmann (en banc), 299 Mo. 410, 424, 253 S. W. 991, 994.] In that case it is further said, 299 Mo. l. c. 425, 253 S. W. l. c. 994:

"Congested population has been the foundation for many reasonable classifications in the law. It has furnished the excuse for saying that a general law could not be made applicable. The Constitution recognizes that congested centers may be treated differently from rural sections, and, as between themselves, according to population. The Constitution therefore classifies, or authorizes the classification of, cities and towns. The lawmakers have classified them, and granted to each different powers. But we need not revert to this, because, after all, the real question is whether or not the classification made in these several statutes is chimerical and captious, or reasonable. If there is a reasonable basis for the classification, the law must stand. If there is no reasonable basis the law must fall. This rule is so universal that citations would be superfluous."

It is also well recognized that a statute will not be held unconstitutional unless it clearly appears to be so. The rule is thus stated in Forgrave v. Buchanan County, 282 Mo. 599, 604, 222 S. W. 755, 757:

"It is true, the power to declare an act of the Legislature null and void, because it infringes upon provisions of the Constitution of the State or of the United States is, by reason of our system of government, vested in the courts. But great care and caution has always been used in the exercise of this high prerogative. We have accordingly laid it down, as a rule, that unless the conflict with the Constitution is so plain that it is beyond reasonable doubt, the act would be held constitutional and valid."

And see State ex rel. Maggard v. Pond, 93 Mo. 606, 619, 6 S. W. 469, stating that "No rule of construction is better established, both on principle and authority, than that acts of the Legislature are presumed to be constitutional until the contrary is clearly shown."

Approaching the question before us with these principles in mind we find nothing in the section of the statute under consideration that we can justly say appears unreasonable or capricious. The evils that result from the intemperate use and the unrestrained sale of intoxicating liquor are so well known and have so often been adverted to by the courts as to need no further comment by us. Likewise it is well known that the question of how best and most satisfactorily to regulate the liquor traffic is not of easy solution. Regulations that might be appropriate for rural districts and small towns might not be so for larger population centers, and *vice versa*. For example, incorporated cities have their police and other agencies for the preservation of order in addition to the state agencies which

alone are available in the rural districts. Other reasons for differentiation might be suggested. Clearly some kind of reasonable classification may be adopted to meet the differing conditions of different localities. It may be that classification cannot be made with such mathematical nicety as to work out absolute equality as between each and every person in one class and each and every person in another class, but that does not invalidate the law if there is a reasonable basis for the classification and all persons in a given class are treated alike. In Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, the court had under consideration a statute of New York which established certain classifications relating to wells sunk for drawing mineral waters from the earth. The court, discussing a contention that the classification was arbitrary and consequently denied the equal protection of the laws to those whom it affected, said:

"The rules by. which this contention must be tested, as is shown by repeated decisions of this court, are these:, 1. The equal-protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classifica-cation in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

The above quotation is particularly applicable to the question to be considered in paragraph II, infra, but it is also pertinent here.

The contention that the statute in question is discriminatory and a special law because in certain cities the sale of intoxicating liquor at retail, by the drink, for consumption on the premises, may not be licensed unless authorized by vote of the inhabitants, while it may be licensed in other cities without such vote, is answered adversely to respondent in State ex rel. Maggard v. Pond, supra, where the constitutionality of the "Local Option Law" of 1887 was upheld. In 1887 there was in force a law, known as the Dram Shop Law, authorizing and regulating the sale of intoxicating liquor throughout the State. The Local Option Law authorized the people in that portion of any county lying outside the corporate limits of any city or town having 2500 inhabitants or more to vote on the question of whether or not intoxicating liquor should be sold

in the territory voting; and similarly the people in a city of 2500 or more inhabitants were authorized to vote, independently of the remainder of the county, on such question. If the vote was against the sale of intoxicating liquor such sale was thereafter prohibited in the territory or city which had so voted. We further mention here, though we do not regard it as affecting the principle involved, that when the Local Option Law was passed the statute, Article I, Chapter 89, Revised Statutes 1879, divided cities into four classes, first, second, third and fourth, according to population, and fourth class cities embraced all towns and cities containing 500 and less than 5000 inhabitants, which should elect to become cities of said class (Sec. 4383, R. S. 1879), so that the 2500 population classification of the Local Option Law was not based upon the general statutory scheme of dividing cities into classes according to population.

In State ex rel. Maggard v. Pond, supra, the Local Option Law was assailed as unconstitutional on the ground, asserted here, that it was a special law, also that it was an unauthorized delegation of legislative power, and on other grounds. In fact it was assailed from about every possible angle, as shown by the briefs of able and industrious counsel printed with the official report of the decision. The case was thoroughly considered by this court and the law was held valid. The reasons there given for the court's conclusion apply with equal force in the instant case. By the Local Option Law the people of certain territories were allowed to say by their vote that liquor should not be sold in such territories, though otherwise the licensing of such sale would have been permissible under the Dram Shop Law. In the case before us the general language of the first sentence of Section 13a would permit licensing of sales by the drink, etc., generally, but for the provisos following it. The same principle is involved in both acts. The differences between the two acts are differences in detail and in the manner of applying the principle, rather than in the principle itself.

The constitutionality of the Local Option Law was again challenged in Ex parte Swann, 96 Mo. 44, 9 S. W. 10, and again it was held valid. The attack continued for a dozen years or so, resulting that it finally became accepted as a settled proposition that said law was valid. In Ex parte Handler, 176 Mo. 383, 75 S. W. 920, is found reference to eight or ten cases in which its validity was recognized. Further discussion of the questions thus settled does not appear needful:

As to the difference between the regulations governing issuance of license for sale of malt liquor containing not in excess of 5 per cent alcohol and those applying to ardent spirits like whiskey and other spiritous liquors we think it obvious that the difference in the

character of the liquors justifies different methods of regulation.

Neither can the law be held to be local or special on the theory that the classification as to cities embraces only those having the designated population at the time the law was enacted and does not include any not then having but which may later have such population. Referring to the election authorized, said Section 13a provides, "The population of said cities to be determined by the last census of the United States completed *before the holding of said election*" (italics ours), thus showing the legislative intent that cities which had not the designated population when the act was passed are to be included in the class mentioned as and when they may acquire such population. In Forgrave v. Buchanan County, supra, the court had under consideration a statute relating to justices of the peace. It provided for the number of justices and their salaries "in all townships which now contain or may hereafter contain" 75,000 and not over 150,000 inhabitants. At the time that law was passed there was but one township with the indicated population in the State and it was contended that the law could apply only to that one township and was therefore, a local or special law, inhibited by the State Constitution. But this court held that the language of the act included townships that might hereafter have the designated population, and said, 282 Mo. l. c. 607, 222 S. W. l. c. 758:

"It is well settled that this language takes the law out of the category of a special or local law and makes it a general law, so as not to conflict with the constitutional provisions against special and local laws pointed out by the respondent."

The question of the control and regulation of the liquor traffic is one that calls for and has received the careful consideration of the Legislature. Arguments as to the wisdom of the measures adopted address themselves to the law-making body, not to the courts. The enactment of the statute in question was within the province of the Legislature and said statute is not violative of the provision of the State Constitution invoked.

II. The statute does not deny to respondent or to others whom it affects the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution. It was so held as to the Local Option Law in Ex parte Swann, supra, and the same reasoning makes that decision applicable to the statute under consideration. In the Swann case the court said, speaking of the Local Option Law, "The law in question applies alike to all persons within the territory or locality where it is adopted. There is no discrimination whatever in favor of or against persons or classes of persons within such territory. They are all treated alike." So may it be said of the statute we are considering. In the Swann case the court

quoted from Hayes v. Missouri, 120 U. S. 68, that the Fourteenth Amendment to the U. S. Constitution "does not prohibit legislation which is limited either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subject to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and the liabilities imposed."

In Missouri v. Lewis, 101 U. S. 22, 30, it is said that the Fourteenth Amendment "contemplates persons and classes of persons. It has not respect to local and municipal regulations that do not injuriously affect or discriminate between persons or classes of persons within the places or municipalities for which such regulations are made." In Barbier v. Connolly, 113 U. S. 27, 32, the court, speaking of said Fourteenth Amendment, said:

"Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of it operation it affects alike all persons similarly situated, is not within the amendment."

And in this connection see quotation in paragraph I hereof from Lindsley v. Natural Carbonic Gas Co., supra.

In Crowley v. Christensen, 137 U. S. 86, 34 L. Ed. 620, the City and County of San Francisco had refused the petitioner (for a writ of *habeas corpus*) a license to sell intoxicating liquors at retail in small quantities. He claimed that the law under which he had been prosecuted was void because, through it, the State of California denied him the equal protection of the laws, guaranteed by the Fourteenth Amendment. The court denied his claim, saying in the course of the opinion. (137 U. S. l. c. 91):

"The statistics of every State show a greater amount of crime and misery attributable to the use of ardent spirits obtained at these retail liquor saloons than to any other source. The sale of such liquors in this way has therefore been, at all times, by the courts of every State, considered as the proper subject of legislative regulation. Not only may a license be exacted from the keeper of the saloon before a glass of his liquors can be thus disposed of, but restrictions may be imposed as to the class of persons to whom they may be sold, and the hours of the day, and the days of the week on which the saloons may be opened. Their sale in that form may be absolutely prohibited. It is a question of public expediency and public morality, and not of federal law. The police power of the State is fully competent to regulate the business—to mitigate its evils or to suppress it entirely. There is no inherent right in a citizen to thus sell intoxicating liquors by retail. It is not a privilege of a

citizen of the State or of a citizen of the United States. As it is a business attended with danger to the community it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils. The manner and extent of regulation rest in the discretion of the governing authority.'' [Consult also, Giozza v. Tiernan, 148 U. S. 657, 37 L. Ed. 599; Boston Beer Company v. Massachusetts, 97 U. S. 25, 24 L. Ed. 989; Mugler v. Kansas, 123 U. S. 623; Bartemeyer v. Iowa, 18 Wall. 129, 85 U. S. 129.]

We hold that said Section 13a is valid and that the circuit court was in error in holding it unconstitutional.

■ III. The motion to quash alleges several other grounds of objection to the information, some of them rather technical, which seemingly were not pressed below, or at least appear not to have been given weight by the court, as the court's ruling, quashing the information, appears from the record before us to have been based solely upon the alleged unconstitutionality of said Section 13a. However, in view of the fact that the cause must be remanded to the circuit court, where the State may elect to proceed therewith, one of said other objections should be ruled upon by us, viz.:—The information herein was signed ''Franklin E. Reagan, Assistant Attorney General,'' and was filed by him. The motion to quash challenges his authority so to do.

By Section 11273, Revised Statutes 1929 (Mo. Stat. Ann., p. 585), it is provided that when directed by the Governor the Attorney General or one of his assistants shall aid prosecuting and circuit attorneys in the discharge of their duties and ''when so directed by the trial court'' may sign indictments. We had occasion to consider that statute and the authority of an Assistant Attorney General to sign an information in State v. Huett, 340 Mo. 934, 104 S. W. (2d) 252. In that case we pointed out—340 Mo. l. c. 948, 104 S. W. (2d) l. c. 260 (8)—that the Attorney General is a sworn officer of the State charged with, among others, important duties in the enforcement of the criminal laws, and, 340 Mo. l. c. 946, 104 S. W. (2d) l. c. 259 (7)—we suggested the thought that, absent any proof either way, his authority to act in the given case might perhaps be assumed on the theory that the law presumes right, rather than wrong, action. We did not however, so decide, it being unnecessary to determine the point in the circumstances of that case.

In the instant case we have the same statutory provision but in addition we have others which were not applicable and were not noticed in the Huett case. In 1935, Laws Missouri 1935, pages 267 et seq., the Liquor Control Act was amended by the repeal of certain sections and the enactment of other sections in lieu thereof. By

Section 2-a of said 1935 enactment it is provided that when requested by the Governor, the Attorney General or his assistants shall, in the enforcement of the act, have authority to sign indictments or informations and conduct prosecutions in any county; and by Section 44-a-12 (Laws 1935, l. c. 284) when "for any reason whatsoever, the provisions of this act shall not be enforced in any county in this State, it *shall be the duty* of the attorney general of the State to enforce the same in such county, and for that purpose, he may appoint as many assistants as he shall deem necessary, and he and his assistants shall be authorized to sign, verify and file, all such complaints, affidavits, petitions, informations, indictments and papers as the prosecuting attorney is authorized to sign, verify or file, and to do and perform any act that the prosecuting attorney might lawfully do or perform." (Italics ours.)

The Liquor Control Act places upon the Attorney General duties in relation to enforcement other than those above mentioned. In the instant case there appears in the record no showing *pro* or *con* on the question of his right to act. The duty devolving upon him under said Section 44-a-12 is statutory and mandatory, and not conditioned upon a direction or request from the Governor. In these circumstances we think the presumption of right and lawful, rather than unauthorized, action on the part of said officer should be indulged. We accordingly hold that, on the record before us, the information should not be quashed.

Other objections to the information are such as may be easily obviated by amendment. The order and judgment of the circuit court quashing the information is reversed and the cause is remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.